(25 Misc. Rep. 454.)

AMERICAN TRUST & SAVINGS BANK v. AUSTIN et al.

(Supreme Court, Special Term, Onondaga County.   December, 1898.)

BANKS—DISCOUNTING DRAFTS—BILLS OF LADING—ATTACHMENTS.

A bank receiving a bill of lading from its customer, and discounting a draft drawn by him on the consignee, may enforce its claim against the goods, as against an attaching creditor of the customer, where the consignee refused to honor the draft or receive the goods, though it customarily charged the amount of unpaid drafts back to its customers.

Action by the American Trust & Savings Bank against Oscar F. Austin and others.   Judgment for plaintiff.

D. R. Cobb, for plaintiff.

H. E. Miller, for defendants.

HISCOCK, J.   This action became one of interpleader and equity through the fact that one Thalheimer, holding some moneys claimed by the plaintiff, and also by the present defendants, was allowed to pay the same into court, and have substituted as defendants herein said present defendants.   One Hoffmeyer shipped from Chicago to said Thalheimer, at Syracuse, two lots of butter.   He drew two drafts upon said Thalheimer for the value thereof claimed by him, being nearly $500.   Upon said drafts, and the bills of lading for the butter so shipped, as aforesaid, he obtained from plaintiff the full amount of the drafts, less exchange, etc.   Plaintiff, having advanced the money upon the drafts and bills of lading, forwarded the same through its correspondents to Syracuse, for collection, but payment was refused by Thalheimer, upon the ground that the butter was not up to the agreed standard.   Subsequently, however, he sold the butter, and received the proceeds thereof, amounting to the sum of $476, which has now been paid into court, as aforesaid.   While the proceeds of said butter, either in the form of accounts or moneys, were in his hands, the defendants other than Austin obtained an attachment against Hoffmeyer, which Austin, as sheriff, purported to levy upon such avails of the butter.   Various questions are raised in the case, but, in view of the decision reached upon the principal one litigated, it will be unnecessary to consider the others.   It is claimed by the plaintiff that it discounted the drafts drawn by Hoffmeyer, as aforesaid, upon the strength of the bills of lading accompanying the same, and that by virtue thereof it became the owner of the drafts, and, to the extent of the amount thereof, at least, the owner of the goods covered by the bills of lading, and the proceeds thereof.   Upon the other hand, it is insisted by the defendants that the plaintiff received said drafts and bills of lading for collection merely, or, at least, as the agent of Hoffmeyer, and did not become the owner thereof.   A consideration of all the evidence upon this subject, which it is unnecessary to recapitulate at length, leads me to the conclusion that the plaintiff's contention is the correct one, and that it did become the owner of the drafts and bills of lading, and of the goods as covered by the latter.   No serious contention is raised that plaintiff passed the entire amount of the drafts, when it took them, accompanied by the bills of lading, to the credit of Hoffmeyer in his account, and they were subsequently drawn out by him.   Defendants'

contention that plaintiff was acting simply as collecting agent for Hoffmeyer is based largely upon a general rule adopted by plaintiff in its banking business, to the effect that, in receiving checks or drafts on deposit or for collection, it acted only as agent for the depositor, and, beyond carelessness in selecting agents at other points, and in forwarding to them, it assumed no liability. This rule was made and adopted by plaintiff, and of course it could, if it saw fit, in connection with any transaction, waive it, and make the transfer of drafts to it absolute and unconditional. But, even if it did not do this in this transaction, the rule does not seem to me to have the effect claimed by defendants. If plaintiff discounted, and thereby became the absolute owner of, a draft for a customer, and the draft for any reason was not paid, it would naturally expect to charge it back to the customer's account, or compel him in some way to make it good. In the case of a draft so discounted, and payable in a distant city, it would be necessary for the plaintiff to utilize a line of collecting agents, and any one of them, through failure or insolvency, might defeat the collection of the draft, and place plaintiff where it might desire to charge the same back against its customer. And, as I look at it, this rule was intended to cover that part of its transactions with its customers, and, as to those acts, to make the customer responsible, and relieve the bank from liability, except within the limits named by the rule. Findings and judgment in favor of plaintiff, with costs, may be prepared and settled, upon one day's notice, if not agreed upon.

Judgment for plaintiff, with costs.