Martin J. Moroney, Claimant, *v.* The State of New York (No. 9784).

(State of New York, Court of Claims, March, 1910.)

Canals — Compensation for appropriation of land: Upon adjustment includes complete compensation for all rights: Liability of fund.

States — Claims — Court of Claims — Jurisdiction — Controversy in which State is not concerned.

The State's settlement for private property taken for canal purposes includes an adjustment of all the damages for such taking, and, in the absence of an agreement to the contrary, all liens and incumbrances must be satisfied out of the amount agreed upon by said settlement.

A lease is an incumbrance, and the value of a leasehold interest in property taken for canal purposes must come out of the amount agreed to be paid to the owner of the property as provided by section 88 of the Canal Law. The holder of the leasehold interest has no claim against the State but his claim is against the fund.

The Court of Claims is a statutory court having only such powers as are conferred upon it by the statute creating it and which come within the authority of the Legislature to enact; and upon a claim by the lessee where not only the value of a lease is in issue but also its validity, upon both of which questions the owner of the property is entitled to be heard, the Court of Claims, unless by his consent, has not jurisdiction to determine such issues which under the Constitution are triable in the ordinary constitutional courts.

Claim against the State by a tenant of property appropriated for the Barge canal.

Barnum & Wells, for claimant.

Edward R. O'Malley, Attorney-General, for State.

Rodenbeck, J. The claimant's remedy in this claim is against the fund representing the property appropriated and not against the State.

He claims to have been a tenant of the property at the time of the appropriation, having produced in court a written lease, dated March 31, 1906, for five years, expiring March 31, 1911, leaving an unexpired term of two years, nine months and twenty-six days. The lease was recorded April 30, 1909, after the appropriation of the property, June 5, 1908, and after its purchase by the then owner. The lease was made between Daniel E. Rairdon, owner, and Frank J. Lester and the claimant, as copartners, for carrying on a blacksmith business on the appropriated property. Before the appropriation, Rairdon had sold the property to one Sheridan and he, in turn, had conveyed it to E. G. Heaton, who was the owner at the time of the appropriation. After the appropriation, but before the filing of the claim, Lester had executed a bill of sale to Moroney. From the date of the lease to the date of the appropriation, Moroney, alone, or Lester and Moroney, as copartners, were in possession and paid a monthly rent of six dollars and twenty-five cents, this amount being paid for a period of time to E. G. Heaton, who disputes the lease and claim of Moroney. The entire property was appropriated by the State, and the owner made a settlement with the State appraiser, the amount of which has not been paid. The owner was not made a party to the present claim and has, therefore, not consented to have any issues between himself and the claimant determined by the Court of Claims.

Under this state of facts, the claimant's remedy is against the fund in the hands of the State and not against the State.

The State's settlement includes an adjustment of all of

the damages for the appropriation of the property; and out of the amount agreed upon, in the absence of any agreement to the contrary, must come all of the liens and incumbrances against the property. The lease is an incumbrance (Forster v. Scott, 136 N. Y. 577); and, unless there was some fraud or misrepresentation or misunderstanding when the agreement was made with the State appraiser, the value of the leasehold interest must come out of the amount agreed to be paid to the owner. A situation like this is provided for in the Canal Law which says that "When damages are awarded for the appropriation of any lands or water to the use of a canal and it appears that there is any lien or incumbrance on the property so appropriated, the comptroller may deposit the amount awarded in any bank, in which moneys belonging to such account may be deposited, to the account of such award, to be paid and distributed to the persons entitled to the same as ordered by the supreme court on application of any person." § 88.

If this conclusion is erroneous and the claimant has the right to ask this court to fix the value of his leasehold, he must bring the owner of the premises into court and make him a party to this proceeding. Upon the question of the value of the leasehold, the value of which must come out of the compensation allowed for the fee, the owner is entitled to be heard. In this case there is not only a dispute as to the value of the lease but also one as to its validity, and upon both of these questions the owner is entitled to be heard. There is ample power in the court to order the owner to be made a party to the proceeding; and, when thus brought in, the value of the lease may be fixed by the court, provided the owner consents thereto. Code Civ. Pro., § 281.

But, if the owner when made a party to the proceeding does not consent to have his dispute with the claimant passed upon by this court, another serious question arises as to the power of this court to pass upon such questions.

The Court of Claims is not referred to by name in the Constitution, but it has a constitutional existence by virtue of the provision in the Constitution which prohibits the Legislature from auditing or allowing any private claim or

account against the State and authorizes it to make appropriations to pay claims when they shall have been audited and allowed according to law (State Const., art. 3, § 19) and the provision which says that, when private property is taken for a public use, the compensation to be made therefor shall be determined by a jury, or by not less than three commissioners appointed by a court of record as shall be prescribed by law, except when such compensation is made by the State.   Id. art. 1, § 7.

The former provision was inserted in the Constitution by a vote of the people November 3, 1874, and went into effect January 1, 1875.   There had existed prior to that time for many years Canal Appraisers who passed upon allowances for appropriations and certain claims connected with the canals, and the Legislature previously had audited and allowed claims of other character; but, after the adoption of this provision of the Constitution, the State Board of Audit was created, consisting of the Comptroller, the Secretary of State and the State Treasurer, whose duty it was to hear all private claims and accounts against the State, except such as were heard by the Canal Appraisers. Laws of 1876, chap. 444. In 1883, the Canal Appraisers and State Board of Audit were abolished and the Board of Claims was created, with jurisdiction to hear, audit and determine all private claims against the State which shall have accrued within two years.   Laws of 1883, chap. 205.   In 1897 the Board of Claims was abolished and the Court of Claims was created, with all the powers and jurisdiction of the Board of Claims and jurisdiction generally to hear and determine private claims against the State which shall have accrued within two years before the filing of the claim.   Laws of 1897, chap. 36.   The latter statute is an amendment of the Code of Civil Procedure and contains the further provision that the court may bring in parties· necessary to the complete determination of a controversy in matters over which the court has jurisdiction and may render judgment for or against any of the parties as may be equitable.  Code Civ. Pro., § 281. The Constitution of 1895, therefore, left open the whole matter of the creation of an appraiser, board or court to determine claims against the State,

including claims that might arise out of the exercise of its power of eminent domain. In the exercise of this power, the Legislature has vested the Court of Claims, by provisions of the Code of Civil Procedure, the Barge Canal Act and other statutes, with power to pass upon certain private claims against the State, including appropriations in connection with the Barge canal.

It might be contended from the foregoing that, notwithstanding the provisions of the judiciary article creating courts for the determination of controversies between citizens (State Const. art. 6), this court has not only the power conferred upon it by statute to pass upon the amount of damages to be allowed in appropriation cases but the implied jurisdiction to pass upon all incidental questions that may arise in connection with the exercise of this power, including disputes between two parties over a parcel of land which has been appropriated, each of whom makes a claim against the State. If this contention is correct and there is that inherent power in the court derived from the general jurisdiction conferred upon it, the court would have power, in this instance, without the consent of the owner, to pass upon the amount of the tenant's interest after the owner has been made a party to the proceeding and given an opportunity to be heard.

As against this view, however, there is the further position that this court, being a statutory court, has only such powers as are conferred upon it by the statute creating it and which come within the authority of the Legislature to enact, and that it can not pass upon any disputes between citizens which under the Constitution are triable in the ordinary constitutional courts.

The judiciary system is provided for in the State Constitution, and it vests the Supreme Court with general jurisdiction in law and equity. State Const. art. 6. This language forbids the transference of this jurisdiction to other courts so as to restrict citizens in the right thus granted to them. In the case of State v. County of Kings, 125 N. Y. 312, the State undertook to authorize the Board of Claims to determine a claim of the State against certain counties. The case did not turn upon the constitutional right of the Legislature to

permit the State to sue the counties in a court of its own creation; but upon this question Chief Judge Ruger said: " We do not question the fact that the Board of Claims is a constitutional tribunal and is lawfully authorized to determine claims against the State which may have been referred to it but it does not follow that the Legislature can compel citizens to appear before it and litigate claims made by the State or any other party against them. * * * This however does not necessarily authorize the Legislature to create a judicial tribunal of general jurisdiction to hear and determine legal questions which are cognizable in the regular constitutional tribunals of the State." Page 322. A long list of cases affirms the doctrine that the Constitution confers upon the Supreme Court general jurisdiction in law and equity and that the Legislature has no power to abridge or limit such jurisdiction, either with or without the consent of that court. DeHart v. Hatch, 3 Hun, 375; Anderson v. Reilly, 66 N. Y. 189; Alexander v. Bennett, 60 id. 204.

In Alexander v. Bennett, *supra,* Judge Rapallo said: " The jurisdiction which the Constitution preserves in the courts named is inalienable, and carries with it the corresponding duty on the part of those courts to exercise it, when called upon in proper form so to do. The constitutional provision protects the parties to an action, brought in either of those courts, in the right to require it to adjudicate the controversy between them. If the act of 1874 had required the consent of all the parties to the action as well as of the court, to the transfer of jurisdiction over it to another court, a different question would be presented. But this act purports to confer upon the court the power to transfer its jurisdiction over any action of its own motion, and without any reason, and even against the protest of all the parties. This, in my judgment, deprives litigants of a right to invoke the action of a tribunal provided for them by the Constitution and violates the spirit and intent of that instrument." Page 207.

Numerous other authorities for this proposition might be cited. Mussen v. Ausable Granite Works, 63 Hun, 367; Getman v. Mayor, 66 id. 236; City of Brooklyn v. Mayor, 25 id. 612; Bell v. Niewahner, 54 App. Div. 530; People

ex rel. Mayor v. Nichols, 79 N. Y. 582; People ex rel. Hill v. Supervisors, 49 Hun, 476; People v. Coughtry, 58 id. 245.

It would seem from these authorities that the Legislaure has no power to create a court wherein suitors are compelled to try issues without consent which they have a constitutional right to try in the regular courts, and there is nothing in the act creating the Court of Claims which indicates an intention on the part of the Legislature to compel suitors to try isssues between them in that court.

The Court of Claims was created to try claims against the State; and, if the Legislature has given it broader jurisdiction, it was undoubtedly the intention that this jurisdiction should be exercised only in cases where the parties consented to submit their issues to the Court of Claims rather than to a court to which they had a constitutional right to apply. Section 246 of the Code of Civil Procedure provides that the court shall have jurisdiction to hear and determine a " private claim against the State," but section 281 seems to confer upon the court a broader jurisdiction. It provides that the court may order parties to be brought in and made parties to any action or proceeding pending in the court, whenever it is made to appear that they are necessary to a complete determination of the controversy or the determination of a liability in matters over which the court may have jurisdiction; and that in such cases the court " may render judgment for or against any of the parties in such action or proceeding as may be just and equitable." This language would seem to confer upon the court jurisdiction over controversies between private citizens, wherever their controversies are involved in the determination of the liability of the State; but the section must be construed to mean that such jurisdiction can be exercised only in cases' where the parties consent to have issues between them determined in the Court of Claims. There is no legal objection to giving the Court of Claims this jurisdiction and to its exercising it, providing the parties consent thereto. · While jurisdiction cannot be created by the consent of parties where the Constitution or the Legislature has not conferred it (People ex rel. Platt v. Rice, 144 N. Y. 249; Matter of Porter, 34 App. Div. 150), it may be waived

where it exists (Anderson v. Reilly, 66 N. Y. 189) and, where the Constitution confers upon certain courts jurisdiction to try certain issues and the Legislature confers upon the Court of Claims jurisdiction to pass upon the same issues where they are involved in a claim made against the State, the parties may waive their constitutional right to have the issues determined in the regular courts and submit themselves to the jurisdiction of the Court of Claims. Anderson v. Reilly, 66 N. Y. 192.

There is evidence running through the statutes relating to the jurisdiction of the Court of Claims that the Legislature had in mind the limitation upon its power to confer, without the consent of the parties, jurisdiction upon the Court of Claims in controversies between citizens. The Barge Canal Act gives the court " jurisdiction to determine the amount of compensation for lands, structures and waters so appropriated." Laws of 1903, chap. 147, § 4. Section 269 of the Code of Civil Procedure provides that " where damages are awarded for the permanent appropriation of land for the public use there shall also be filed with the comptroller a satisfactory abstract of title and certificate of search as to incumbrances showing the person demanding such damages to be legally entitled thereto." The Barge Canal Act under which this claim was filed provides that " the attorney general shall furnish to the comptroller and state treasurer all searches necessary to prove the title to the lands taken." Laws of 1908, chap. 196. Section 47 of the Canal Law relating to claims for damages for appropriations says that they shall not be paid " until a satisfactory abstract of title and certificate of search as to incumbrances is furnished showing the person demanding such damages or commutations to be legally entitled thereto, which abstract and search shall be filed in the office of the comptroller"; and, finally, section 88 of the Canal Law contains this provision: " When damages are awarded for the appropriation of any lands or water to the use of a canal and it appears that there is any lien or incumbrance on the property so appropriated, the comptroller may deposit the amount awarded in any bank, in which moneys belonging to such account may be deposited, to the account

5

of such award, to be paid and distributed to the persons entitled to the same as ordered by the supreme court on application of any person." This is in accordance with the usual practice in condemnation proceedings. City of Geneva v. Henson, 128 N. Y. 345; Matter of William & Anthony Streets, 19 Wend. 678.

If the conclusion here urged is not correct and the Court of Claims can determine issues between citizens without their consent, this court can, without the consent of the parties, pass upon the validity of a marriage, in determining a dower interest or the validity of a contract or lease, in determining the interest of a purchaser or lessee; or construe a will or other written instrument, in determining the interest of claimants; or pass upon numerous other difficult and complicated questions that may arise, in connection with determining a "private claim against the state." The fact that such issues may arise in controversies with the State does not authorize the Court of Claims to exercise authority over them without the consent of the parties, in the face of the judiciary article which creates special courts for the trial of those issues. Would any one contend that if, instead of creating the Court of Claims to pass upon claims against the State, the Legislature had created, for the purposes of appropriation cases, a board or a single appraiser, as it had the right to do, serious questions of law between parties presenting claims against the State could be adjudicated?

The claim should be dismissed and the claimant remanded to his remedy against the fund created by the agreement between the owner and the State which takes the place of the property appropriated and out of which any liens and incumbrances must be paid (Matter of W. S. & B. R. R. Co., 34 Hun, 632; Matter of City of New York, 129 App. Div. 707); unless the owner is brought into court as a party to this proceeding and consents to have the interests of the claimant determined by this court. Anderson v. Reilly, 66 N. Y. 189.

Ordered accordingly.