(96 Misc. Rep. 265)

## AMERICAN NAT. BANK v. WARREN et al.

(Supreme Court, Special Term, Monroe County. July 24, 1916.)

1. JURY ⬥28(6)—JURY TRIAL—WAIVER.

In an action for the release of the proceeds of a draft from a levy thereon under warrant of attachment, where it was not pleaded that plaintiff had an adequate remedy at law, and all parties from the beginning treated the action as in equity, and proceeded to and through trial upon that theory, under the circumstances they waived trial by jury, and were estopped after trial from making demand for trial by jury.

[Ed. Note.—For other cases, see Jury, Cent. Dig. § 181; Dec. Dig. ⬥28(6).]

2. BANKS AND BANKING ⬥127—CARRIERS ⬥58—BILLS OF LADING—TRANSFER—DEPOSIT OF DRAFT.

Where produce dealers deposited with a bank a draft, representing the price of a carload of peaches sold by them, with nonnegotiable bill of lading attached, and the bank credited the dealers with the amount, it became indebted to them in the amount, and became the owner of the draft, and, as collateral security, the goods represented by the attached bill of lading.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 304, 310; Dec. Dig. ⬥127; Carriers, Cent. Dig. §§ 179-190; Dec. Dig. ⬥58.]

3. SALES ⬥255—TRANSFER OF BILL OF LADING—EFFECT.

Where produce dealers sold a carload of peaches and deposited the draft representing the price, having a nonnegotiable bill of lading attached, receiving credit for the amount, the buyers of the peaches had no right of action against the bank for breach of warranty in the sale of the peaches; their claim being solely against the sellers.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 715, 716; Dec. Dig. ⬥255.]

4. SALES ⬥233(1)—RIGHTS OF THIRD PARTY—FAILURE OF CONSIDERATION.

Where the buyers of peaches from produce dealers refused to accept the draft representing the price drawn upon them by the dealers, or accepted it and then refused payment, the defense of failure of consideration because of a breach of warranty was available to them against the bank with which the sellers deposited the draft.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 653; Dec. Dig. ⬥233(1).]

5. BILLS AND NOTES ⬥216—NONNEGOTIABLE PAPER—PURCHASE AND SALE.

Nonnegotiable paper may be bought and sold and ownership thereof passed as effectively as negotiable paper; the holder of nonnegotiable paper being under no disability, except that he does not take it free from possible defenses.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 518-523; Dec. Dig. ⬥216.]

6. BANKS AND BANKING ⬥127—TITLE TO PROCEEDS OF DRAFT.

Where a draft for the price of peaches sold by produce dealers was accepted and paid by the buyers, and the draft for the price, with nonnegotiable bill of lading attached, which had been deposited in a bank, was surrendered to the buyers, the proceeds of the draft were the property of the bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 304, 310; Dec. Dig. ⬥127.]

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. ATTACHMENT ⬤⤳300—ACTION TO RELEASE—PLEADING.

In an action by a bank for the release of the proceeds of a draft from a levy thereon under warrant of attachment, the bank's mistaken belief that it was a bona fide owner and holder of the draft itself, deposited with it, having attached a nonnegotiable bill of lading covering goods sold by the depositor of the draft, reached only the quality of its ownership, and did not militate against the general pleading showing its right to recover.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 1068, 1069; Dec. Dig. ⬤⤳300.]

8. ATTACHMENT ⬤⤳351—ACTIONS ON BONDS OR UNDERTAKINGS—DAMAGE—LEGAL EXPENSES.

In actions founded upon bonds or undertakings in attachment proceedings, legal expenses are legitimate items of damage, as the obligation by Code Civ. Proc. § 640, must provide in case of default for a reimbursement of all costs and damages.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 1290–1303; Dec. Dig. ⬤⤳351.]

9. COSTS ⬤⤳169—LEGAL EXPENSES.

Ordinarily a successful litigant can have no recovery for legal expenses incurred by him beyond the costs provided by statute to be taxed.

[Ed. Note.—For other cases, see Costs, Cent. Dig. § 652; Dec. Dig. ⬤⤳169.]

Action by the American National Bank against Almond J. Warren and others. Judgment directed for the release of the attached moneys, with interest, to plaintiff.

Medcalf, Averill & Tompkins, of Rochester, for plaintiff.
Arthur T. Pammenter, of Rochester, for defendants.

SAWYER, J. This action was brought for the release of the proceeds of a draft collected by the Lincoln National Bank of Rochester from a levy thereon made by the defendant Brown, as sheriff, under a warrant of attachment issued in an action brought by the defendants Warren & Smallridge against the copartnership of Burkholm & Benson, and to recover damages resulting from the levy. The facts, so far as material, are as follows:

Plaintiff is a national bank located at Benton Harbor, Mich. Among its depositors was the copartnership of Burkholm & Benson, produce dealers of the same town. On September 15, 1914, Mr. Benson, of this firm, presented to the bank for discount a draft for $554.85, payable to his firm's order, and drawn upon the defendants Warren & Smallridge, to which was attached a nonnegotiable bill of lading for a carload of peaches shipped by Friday Bros., of Coloma, Mich., to Warren & Smallridge. Burkholm & Benson were given credit for the face of the draft in their passbook by plaintiff, who also gave them the same credit in their account on its individual ledger. Plaintiff then forwarded the draft with the bill of lading attached to the Lincoln National Bank of Rochester, with instructions to hold for the arrival of the car and to wire nonpayment. On the arrival of the car the draft and bill of lading were presented to the drawee, the defendants Warren & Smallridge, who accepted the same and gave to the Lincoln Na-

tional Bank a certified check for $554.85 in payment thereof, receiving at the same time from said bank the draft and bill of lading. The defendants Warren & Smallridge immediately brought action for breach of warranty against Burkholm & Benson, procured a warrant of attachment, and delivered same to the defendant Brown, as sheriff of Monroe county, N. Y., who levied under their direction upon the proceeds of the draft still in the possession of the Lincoln National Bank. Burkholm & Benson continued to do business with the plaintiff, and at no time prior to such levy and notice thereof to it was their account with plaintiff less than said sum of $554.85, although it appears that, at some time later, their account was below that amount and was occasionally overdrawn.

The plaintiff contends that it is the owner of the proceeds of this draft, while the defendants Warren & Smallridge claim that such proceeds belong to Burkholm & Benson. In his brief, filed after the close of the trial, defendants' counsel for the first time has raised the questions that plaintiff has an adequate remedy at law, and that the action is not an equity action, but that defendants were entitled to a trial by jury of the issues herein.

[1] It does not seem necessary to determine whether or not this is so. That plaintiff has an adequate remedy at law is not pleaded, and all parties have, from the beginning, treated this as an action in equity, and proceeded to and through the trial upon that theory. Under such circumstances, defendant has waived both questions, and is estopped from, at this late day, making a demand for trial by jury. Mentz v. Cook, 108 N. Y. 504, 15 N. E. 541; Lough v. Outerbridge, 143 N. Y. 271–277, 38 N. E. 292, 25 L. R. A. 674, 42 Am. St. Rep. 712; Code Civ. Proc. § 1009, subd. 4.

[2] By this transaction plaintiff became indebted to the firm of Burkholm & Benson in the sum of $554.85, and as an offset to such indebtedness became the owner of the draft in question, and as a collateral security thereto of the goods represented by the bill of lading, which was attached. Albany County Bank v. People's Ice Co., 92 App. Div. 47, 86 N. Y. Supp. 773; Am. T. & S. Bank v. Austin, 25 Misc. Rep. 454, 55 N. Y. Supp. 561; Goetz v. Bank of Kansas City, 119 U. S. 551, 7 Sup. Ct. 318, 30 L. Ed. 515; Commercial Bank v. Pfeiffer, 108 N. Y. 242, 15 N. E. 311; Personal Property Law, § 216, added by Laws 1911, c. 248. See, also, the Michigan act. In the last-cited case the rule is laid down by Chief Judge Ruger (108 N. Y. 250, 15 N. E. 313), in the following emphatic language:

"It is settled beyond dispute in this state that the discount of a draft drawn by a consignor upon his consignee, which is accompanied by a delivered bill of lading to the party making the advance, passes to such party not only the legal title to such property, but in the eye of the law the transfer of the bill of lading is regarded as an actual delivery and an actual change of possession of the property."

I am not unmindful of the fact that, in the case now under consideration, physical consignment of the goods was made at Coloma, Mich., by the firm of Friday Bros. They were the vendors thereof to Burkholm & Benson, and in the shipment to Warren & Smallridge acted

under that firm's instructions and as its agent, and Burkholm & Benson were the real consignors.

[3, 4] The legal effect of the whole transaction was that plaintiff had taken over and become the owner of business paper with its collateral security under circumstances which might lead to the defeat of any attempt on its part to collect same. Such purchase did not, however, make the bank a party to the transaction between the original parties, nor subject it to any litigation in that behalf, except such as it might bring upon itself in an attempt to enforce payment of the obligation it had purchased. Warren & Smallridge had no, nor could have any, right of action against plaintiff for breach of warranty in the sale of these peaches. Their claim, and all their claim, for loss, was solely against the firm of Burkholm & Benson. They might have refused to accept the draft; they might have accepted it, and then refused payment; in either of those events the defense of failure of consideration because of the breach of warranty would have been available to them against plaintiff. There the bank's danger ended.

[5] Nonnegotiable paper may be bought and sold, and ownership thereof passed, as effectively as in the case of negotiable paper. The holder of nonnegotiable paper, and, equally so, a holder not in due course of negotiable paper, is under no disability regarding it, except that he does not take it free from possible defenses.

[6] This draft was, however, both accepted and paid by Warren & Smallridge, and the security which plaintiff held as collateral thereto surrendered to them. That its proceeds were the property of plaintiff seems beyond dispute, and their attachment as the property of Burkholm & Benson cannot be sustained. My attention has been called to certain decisions in the courts of other states as bearing upon the rights of the parties herein. Tapee v. Varley Wolter Co., 184 Mo. App. 470, 171 S. W. 19; Tolerton v. Anglo-Col. Bk., 112 Iowa, 706, 84 N. W. 930, 50 L. R. A. 777; Leonhardt v. Small, 117 Tenn. 153, 96 S. W. 1051, 6 L. R. A. (N. S.) 887. But it does not seem profitable to here discuss them at length. It is sufficient to say that generally they sustain the proposition, hereinbefore announced, that a discounting bank does not assume the liabilities of its customer, except in so far as same may be used as a defense against the paper itself. I am not aware of any decisions by the courts of this or any other state to the effect that the proceeds of a draft paid to a holder not in due course, he being free from fraud or actual bad faith, can be still reached by the drawee for demands against his drawer. Nor do I think such is the law.

It is not claimed that plaintiff had notice of any defect in the goods described in the bill of lading, nor is there any proof of its bad faith in the transaction. Quite likely it could, under well-understood banking rules, have charged the amount of this draft back to Burkholm & Benson, and thus protect itself from loss. We are not concerned with its reason for not so doing. It had two remedies, and has made an election as to which it would adopt. To my mind that election in no way imports bad faith in its dealings with this paper.

[7] The amended complaint herein is based upon the theory that

plaintiff is the owner of the proceeds of the draft in question, and that an attachment thereof could not lie in behalf of Warren & Smallridge in their action against Burkholm & Benson. Plaintiff's mistaken belief that it was a bona fide owner and holder of the draft itself reaches only the quality of its ownership, and in no way militates against the general pleading showing its right to recover.

[8] The demand that plaintiff be awarded damages to cover its legal expenses incurred herein is somewhat unusual. It is true that in actions founded upon bonds or undertakings in attachment proceedings legal expenses are held to be legitimate items of damage. This, however, is founded in the nature of the obligation sued upon, which must provide, in case of default, for a reimbursement of all costs and damages. Code Civ. Proc. § 640.

[9] Ordinarily a successful litigant can have no recovery for such damage beyond the costs provided by statute to be taxed, and there seems to be nothing here, where that contractual relation between the parties does not exist, to take the case out of the usual course.

Judgment for the release of the attached moneys, with interest, to plaintiff, is directed, with costs.