**CITY NAT. BANK OF HOBART v. STATE ex rel. FREELING, Atty. Gen., et al.**

No. 9460—Opinion Filed Nov. 19, 1918.

(176 Pac. 232.)

1. **Carriers—Bill of Lading with Draft Attached—Transfer of Title to Property.**

Where a bill of lading is indorsed to the bank with draft attached and the draft paid to the assignor by the bank, held, that such a transaction had the effect to transfer the legal title of the property called for therein to the bank.

## 2. Garnishment—Plea in Intervention—Sufficiency.

The plea of intervention examined, and held to state a cause of action and was error to sustain a demurrer thereto.

(Syllabus by Hooker, C.)

Error from District Court, Kiowa County; Thos. A. Edwards, Judge.

Suit by the State of Oklahoma, on relation of S. P. Freeling, Attorney General, against George A. Bottom, G. C. Bottom, and William Patterson, copartnership, with garnishment against the First National Bank of Gotebo and upon the copartnership, in which the City National Bank of Hobart intervened and claimed the funds in the hands of the garnishee. State's demurrer to interplea sustained, and the City National Bank of Hobart brings error. Judgment reversed, and cause remanded, with directions to overrule the demurrer and for a new trial.

W. A. Phelps, for plaintiff in error.

Tolbert & Tolbert, for defendants in error.

Opinion by HOOKER, C. One George A. Bottom became indebted to the Farmers' & Merchants' Bank of Mountain View for which he executed his note to the bank. This bank became insolvent, and the banking department of the state took possession of the assets of the bank, and thereby acquired ownership of the notes in question.

The state thereafter instituted suit in the district court of Kiowa county against Bottom upon said notes and caused a garnishee summons to be issued and served upon the First National Bank of Gotebo, and upon the partnership firm of Bottom & Patterson. The firm of Bottom & Patterson answered that it owed George A. Bottom the sum of $479.40, and the First National Bank of Gotebo answered that the firm of Bottom & Patterson had on deposit about $793.60, which had been garnished by one George A. Bottom in an action pending in the county court of Kiowa county.

Thereafter the City National Bank of Hobart filed an interplea in this action in which it claimed the funds in the hands of the garnishee. The state filed a demurrer to said interplea which was sustained by the court, and from said ruling the City National Bank has appealed.

The pleading of the City National Bank alleges the following state of facts: That some time prior to the institution of this action the Studebaker Company shipped some automobiles to George A. Bottom and drew a draft upon him for the purchase price through the First National Bank of Hobart.

Bottom was unable to pay the draft and made an arrangement with the said bank to pay the draft for him, and, in order to protect the bank, Bottom assigned the same to the bank by writing thereon these words:

"I hereby assign to the City National Bank all my rights, title and interest in and to the automobiles covered by this draft."

The bank took up and cared for the draft with the bill of lading attached and caused the automobiles to be delivered to George A. Bottom, and it asserted that it thereby became the owner of and acquired a special interest and a property right in and to said automobiles. And that thereafter the said George A. Bottom delivered to the firm of Bottom & Patterson for sale on commission one of said automobiles, which said firm was to sell on commission, and which it did sell on commission and received therefor the sum of $895, and deposited the same in its own name and to its own credit in the First National Bank of Gotebo, and that it thereby became entitled to said fund, which the answer of the First National Bank of Gotebo in this action admits to be due said firm.

Said pleading further alleges that on the 16th day of November, 1916, the said Bottom recovered a judgment in the county court against the firm of Bottom & Patterson, and that the consideration of said judgment was a part of the balance due said George A. Bottom by the firm of Bottom & Patterson for a part of the purchase price of an automobile, and that by reason of its interest it acquired a special interest or right in and to said firm, and was entitled to receive the same to apply on said indebtedness due by George A. Bottom to it.

There can be no question as to the right of parties to intervene in an action of this character where they can establish any claim to the property in litigation, for section 4701, Rev. Laws 1910, clearly gives any person claiming such a right the privilege of interpleading. But the question involved here is whether the pleading of the intervener establishes a cause of action. And it is contended by the plaintiff in error here that under the allegations of its pleading it established a claim superior to the right of the attaching or garnisheeing creditors of George A. Bottom.

It is asserted by the defendants in error that the transaction which took place between the bank and Bottom cannot be regarded as a chattel mortgage for the reason that the requirements of the statute as to the manner of its execution and recording were not attempted to be complied with, and,

that being true, the bank as against the claims of the attaching creditors would not be entitled to a chattel mortgage lien upon this property. And it is likewise asserted that, if the transaction created a conditional sale of the automobiles between the bank and Bottom, the same was likewise invalid as against the claims of the attaching creditors here for the reason that no change of possession as required by statute was had. These contentions, however, as we view it, overlook a cardinal principle involved in this case.

This court, in the case of St. L. & S. F. R. Co. v. Mounts, 44 Okla. 362, 144 Pac. 1037, said:

"A 'bill of lading' stands as a substitute, and represents the goods described therein, and, although not a negotiable instrument in the full sense in which that term is applied to bills and notes, the transfer of the bill passes to the transferee the transferor's title to the goods described."

And also in the case of State Nat. Bank v. Wood, 43 Okla. 252, 142 Pac. 1002, this court said:

"Where a bill of lading in favor of the assignor is by him indorsed to the bank with draft attached and the draft paid to the assignor by the bank, held, that such a transaction had the effect to transfer the legal title of the property called for in the bill to the bank."

And in the body of the opinion it is stated:

"We are of the opinion that the transfer of a bill of lading for the coal in question to the plaintiff bank and the giving of credit to the consignor for the full amount of the purchase price of said coal as represented by the draft drawn and attached to the bill of lading had the effect to transfer legal title of the property to the plaintiff bank.

"In the case of American Trust & Savings Bank v. Austin, 25 Misc. Rep. 454, 55 N. Y. Supp. 561, it was stated:'A bank receiving a bill of lading from its customer, and discounting a draft by him on the consignee may enforce its claim against the goods, as against an attaching creditor of the customer, where the consignee refused to honor the draft or receive the goods, though it customarily charged the amount of unpaid drafts back to its customers."

"Section 829, Rev. Laws 1910, provides: 'All the title to the freight which the first holder of the bill of lading had when he received it passed to every subsequent indorsee thereof, in good faith, and for value, in the ordinary course of business, with like effect and in like manner as in the case of a bill of exchange.'

"Section 830, Rev. Laws 1910, provides: 'When a bill of lading is made to bearer, or in equivalent terms, a simple transfer thereof by delivery conveys the same title as an indorsement.' "

The allegation of the pleading here is that the bank paid this draft drawn by the automobile company upon Bottom, and that the draft with the bill of lading attached was assigned and transferred by Bottom to the bank. This carried with it the title to the property in question, and the bank thereby became the owner of said property, and entitled to deal with it as such. That being true, unless the bank by its subsequent conduct in permitting Bottom to deal with the property as his own has estopped itself from asserting ownership, which of course the pleading here does not disclose. it would not only be entitled to the automobiles as against the claim of Bottom or his creditor, but would be entitled to the proceeds derived therefrom where the same were properly traceable.

Construing the pleadings with this view, we must hold that the trial court committed an error in sustaining a demurrer thereto, and the judgment of the trial court is therefore reversed, and this cause remanded, with directions to overrule said demurrer and for a new trial in consistence herewith.

By the Court: It is so ordered.