FLORENCE HATHORN DURANT, Respondent, *v.* MILTON J. WHEDON and HARRY A. BICKLE, Appellants.

Third Department, May 3, 1922.

Contracts — construction — action in equity to determine ownership of money due for State printing in newspaper which was sold, both seller and buyer claiming under sale contract — examination of contract shows buyer entitled to money — evidence — parol evidence to explain contract harmless as defendant opened door — defenses — objection of adequate remedy at law should be taken by answer and cannot be raised for first time at close of plaintiff's case — no State officer necessary party — declaratory judgment — no adequate remedy at law.    :

Where the plaintiff sold a newspaper, excepting the job printing establishment operated in connection therewith, to the defendant and the contract of sale contained the following provision: " It is understood and agreed that all bills payable to the business to the date hereof are to remain the property of the party of the first part who has the right to collect the same at her own proper expense; " and the schedule attached to the contract, specifying the articles transferred by the agreement to the defendant, contained the following provision: " 4 rolls of paper now in the plant, and all other articles, trade, contracts, so-called *political designations or patronage* and appurtenances not used exclusively as a part of the job printing establishment," a sum of money remaining in possession of the State Comptroller being a balance due from the State of New York upon a contract for printing the Session Laws in the newspaper, which had been duly designated for that purpose, such printing having been completed five days before the sale, belongs to the plaintiff.

Extrinsic parol evidence admitted to explain the contract was harmless where the door for such proof was opened by the defendant by his seeking to have his own interpretation applied to the contract.

An objection that the action could not be maintained in equity because plaintiff had an adequate remedy at law cannot be raised for the first time by motion to dismiss the complaint at the close of plaintiff's case. Such an objection should be taken by answer.

It is not important that the Comptroller or any officer of the State was not made a party, since presumably the Comptroller, being an officer of the State, will

respect a decree determining the rights of the parties. This is in conformity with the principle of the declaratory judgment provided for by the Civil Practice Act.

*It seems,* that plaintiff had no adequate remedy at law by mandamus or by suit in the Court of Claims.

APPEAL by the defendants, Milton J. Whedon and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Saratoga on the 14th day of July, 1921, upon the decision of the court rendered after a trial at the Saratoga Trial Term before the court without a jury.

*L'Hommedieu & Whedon [M. J. Whedon* of counsel], for the appellants.

*Lawrence B. McKelvey,* for the respondent.

HINMAN, J.:

The object of the suit was to determine the ownership of a balance due from the State of New York upon a contract for printing the Session Laws for the year 1920. The plaintiff was formerly the owner of a newspaper known as *The Saratoga Sun.* On November 30, 1920, the plaintiff transferred to the defendant Whedon by written agreement of sale certain tools and machinery and *The Saratoga Sun.* There was excepted from the sale the job printing establishment theretofore operated in connection with the publication of the newspaper. On November 25, 1920, five days before the sale, *The Saratoga Sun,* which had been duly designated for that purpose, had completed the publication of the Session Laws for that year. It is not disputed that the agreed compensation for such publication was due, but formal claim had not been filed with the Comptroller and was not filed until December eighth. The amount due for such publication was $2,799. The plaintiff filed claim with the Comptroller and received a part payment, leaving a balance due from the State of $1,599, which has not been paid. This is in the possession of the State Comptroller, by reason of the fact that on January 14, 1921, the defendant made an assignment of his claim to said fund to his codefendant Bickle, who has filed his assignment with the State Comptroller and the latter official is withholding payment pending the determination of the ownership of the fund by a court of competent jurisdiction.

The controversy as to the ownership of the fund arises out of two provisions in the contract under one of which the plaintiff claims the fund and under the other of which the defendant claims the fund. The plaintiff claims under the following provision of the contract:

" It is understood and agreed that all bills payable to the

business to the date hereof are to remain the property of the party of the first part who has the right to collect the same at her own proper expense."

The defendant claims under a provision contained in the schedule attached to the contract which purports to specify the articles of machinery, etc., transferred by the agreement. The provision in question, coming at the end of a long list of articles is as follows:

" 4 rolls of paper now in plant, and all other articles, trade, contracts, so-called *political designations or patronage* and appurtenances not used exclusively as a part of the job printing establishment."

It was conceded at the outset of the trial that " prior to November 30, 1920, Florence Hathorn Durant, plaintiff, was the owner of two newspapers in Saratoga County known as *The Saratoga Sun* and the *Ballston News*, both of which were Democratic papers; that in the month of November, 1919, by resolution in the usual form, the Democratic members of the Board of Supervisors designated *The Saratoga Sun* as the Democratic paper to print the Session Laws of the State of New York for the year 1920; that following that designation, and commencing in the month of July and ending on the 25th day of November, 1920, *The Saratoga Sun* did publish and circulate the said Session Laws; that the amount of the claim of the said *Saratoga Sun* for such printing of the Session Laws was the sum of $2,799, and that on November 30, 1920, this amount had not been paid; that the contract attached to the complaint, marked Exhibit 1 is a true copy of the contract made between Florence Hathorn Durant and M. J. Whedon on the 30th day of November, 1920."

Reading the contract as a whole unaided by any further proof than that which was thus conceded upon the trial, it seems clear that the publication of the Session Laws having been completed, there was due and owing to the business which was the subject of contract between the parties and particularly to the newspaper business which was being transferred rather than the job printing business which was reserved, the sum agreed to be paid therefor by the State. It remained the property of the plaintiff. The phrase " bills payable to the business " is not technically the best phrase that could have been used in view of the use of the word " payable; " but the term " payable to the business " cannot be misunderstood and must be interpreted as meaning " bills receivable."

In the absence of clear language to such effect it would be unnatural to hold that the parties intended to mean only such bills receivable as had been perfected as such by the proper filing of a claim therefor or the submission of a bill and due acceptance thereof. The defendant claims that the contract is unambiguous

and that extrinsic evidence by parol was not available to explain the meaning of the instrument. It is my clear notion that if the phrase quoted is susceptible of any other interpretation than that which I have attributed to it and is ambiguous at all, it is so because the defendant seeks to have it given a different interpretation. The defendant himself has thus opened the door to extrinsic proof by his own claim. The defendant testifies that the phrase was discussed at the time of the contract to mean only moneys due from subscribers and advertisers. He is unaided by any proofs as to the meaning of " bills payable," etc., as used in the newspaper business, except his own testimony, where he seeks to explain his understanding of the term, but even that proof was, upon objection, properly stricken from the record. Further, if the phrase quoted is susceptible of any other interpretation than I have given to it and is ambiguous, it is so by virtue of the contention of the defendant that the contract of sale granted to him the sum due for the printing of these Session Laws under that clause of the schedule attached to the contract which refers to " so-called political designations or patronage." Taking that phrase alone or in the light of the conceded facts to which reference has been made, I fail to see how it can be strained to the point of naturally or necessarily meaning a bill receivable for printing these Session Laws, already due. It did not say sums due from political designations. The designation for the printing was a thing of the past. The printing itself was an accomplished fact. Nothing of value remained except the avails of the designation and the printing. If the printing had been in progress on the date of the contract under a political designation, a meaning might have been attributed to it that the sale of the designation meant the continued right to print and to obtain the avails of such designation, but where the work had been completed no such meaning is naturally attributable to the phrase used. The fair intendment would be to refer to that which was in progress or available in the future. It would require extrinsic proof to indicate that this was not fairly the intention and even the defendant admitted that he expected to get some political patronage in the future.

Reading together both provisions of the contract relied upon by the respective parties, it is my judgment that the fair interpretation of the phrase " political designations or patronage " is that, if it relates to Session Law printing at all, it relates thereto only so far as that printing does not constitute " bills payable to the business."

Therefore, my conclusion on the merits of the controversy is that the court has reached a proper conclusion and that if extrinsic

evidence was improperly received it was by virtue of the claim of the defendant rather than by that of the plaintiff and in any event such proof tends to the same conclusion and was harmless.

The defendant raises the further point that the action could not be maintained in equity because of an adequate remedy at law. This question, however, need not be considered further than to call attention to the authorities which clearly hold that this objection should have been taken by answer and that the plaintiff will not be turned out to seek his remedy elsewhere when the objection is taken for the first time at the trial. It certainly cannot be raised for the first time by motion to dismiss at the close of plaintiff's case. (*Baron* v. *Korn*, 127 N. Y. 224; *Bloomquist* v. *Farson*, 170 App. Div. 64; *Watts* v. *Adler*, 130 N. Y. 646, 647; *American National Bank* v. *Warren*, 96 Misc. Rep. 265, 269.)

The record shows that the defendant at the opening of the trial simply moved for a dismissal of the complaint on the ground that it did not state facts sufficient to constitute a cause of action. It does not appear that the attention of the trial justice was specifically called to the defendant's claim that plaintiff's remedy was at law rather than in equity. The record shows that at the conclusion of the plaintiff's case this ground was specifically mentioned. That certainly was too late. Judging by what appears in the record the defendant had submitted himself to the jurisdiction of a court of equity. No effort was made to amend the answer so as to specifically plead this defense.

The plaintiff had, in fact, no adequate remedy at law by mandamus or by suit in the Court of Claims, which are the only remedies suggested by the defendant.

If the State could be sued the appropriate action would be by a suit against the State, but " it is a fundamental principle of our jurisprudence that no action will lie against a sovereign State, or any of its officers, to enforce an obligation of the State without express legislative permission." (*Matter of Hoople*, 179 N. Y. 308, 311.) The Comptroller cannot be sued except in mandamus. (*Spa Baths Co.* v. *Comrs. State Reservation*, 98 Misc. Rep. 399.) The Court of Claims has no jurisdiction of a claim submitted by law to any other tribunal or officer for audit or determination under section 12 of the Court of Claims Act (Laws of 1920, chap. 922, revising Code Civ. Proc. § 264; *Quayle* v. *State of New York*, 192 N. Y. 47), unless the claim is founded upon express contract and has been rejected in whole or in part by the auditing officer or tribunal (Laws of 1908, chap. 519, amdg. Code Civ. Proc. § 264; *Buckles* v. *State of New York*, 221 N. Y. 418, 422; Laws of 1920, chap. 482, amdg. Code Civ. Proc. § 264). This claim is one to be

determined by the Secretary of State and the Comptroller and, therefore, the Court of Claims would have no jurisdiction.

Neither the Secretary of State nor the Comptroller has been constituted by law a tribunal to adjudicate title to the money as between rival claimants. It was the function of the Secretary of State to approve or disapprove the claim as to the doing of the work, the legality of the contract and the amount of the bill. (See County Law, § 20; Legislative Law, § 48, as amd. by Laws of 1911, chap. 97, and Laws of 1919, chap. 620.) It was the final duty of the Comptroller to audit the account so far as the State's liability was concerned, under section 4 of the State Finance Law. These functions were judicial and not reviewable by mandamus and moreover there has been no rejection of the claim. The State stands ready to pay. The only question is as to the rightful owner. There is no real claim against the State to be adjudicated but it is a claim against the fund by rival claimants. Neither the auditing officers of the State nor the Court of Claims has any jurisdiction to decide the sole question involved, except perhaps by consent of all parties. (*Moroney* v. *State of New York*, 67 Misc. Rep. 58; *Taylor* v. *State*, 124 N. Y. Supp. 818; *People ex rel. Smith* v. *Sohmer*, 163 App. Div. 830; affd., *sub nom. People ex rel. Smith* v. *Travis*, 215 N. Y. 709.)

If there is no question as to the amount due, as in this case, and there is nothing left but the ministerial act of issuing the warrant for the payment of the money, there must be a clear legal right to require the Comptroller to act, for otherwise mandamus is not available. If there is any fair question about the relator's right to have the duty performed the writ should not issue. (*People ex rel. Heinrich* v. *Travis*, 175 App. Div. 721.) There are early authorities holding that mandamus was never designed to be a remedy for the collection of a doubtful claim, there being another claimant for the same thing. (*People* v. *Thompson*, 25 Barb. 73; *People* v. *Booth*, 49 id. 31.) Where the claim is doubtful because of a rival claimant, there is no clear legal right to the thing claimed. The reverse is true. In such case, the sole function of mandamus would be simply to compel action in one way or another where the Comptroller has no statutory duty to exercise such a judgment, and if he did have, it would not be the province of the court to instruct him in advance as to how he should perform his duty. (*People ex rel. Heinrich* v. *Travis, supra,* 728; *People ex rel. Harris* v. *Commissioners*, 149 N. Y. 26.)

A debtor other than the State might bring an action of interpleader to accomplish the purpose, under section 820-a of the Code of Civil Procedure or under sections 285 and 286 of the Civil

Practice Act; but I know of no provision of law permitting the State to bring such an action. In an action against a person other than the State to recover property claimed by a third person, an order of interpleader might be obtained in the discretion of the court. (Code Civ. Proc. § 820; Civil Practice Act, § 287.)

Under section 1332 of the Civil Practice Act (Code Civ. Proc. § 2082), after the joinder of issue by a return, statutory provisions relating to actions are generally applicable to mandamus proceedings. It is thought that thus a third party may, as a matter of sound discretion, be allowed to intervene under section 193 of the Civil Practice Act (Code Civ. Proc. § 452). (*Matter of Bohnet* v. *Mayor, etc.,* 150 N. Y. 279.) But in the present case, interpleader and intervention seem to be too indirect a method of accomplishing what clearly should be accomplished directly. Mandamus with the aid of such remedies becomes the means of determining a question of title, not of compelling the performance of an official duty. No duty exists until title is determined. Presumably the duty will be performed when that question is settled. To entitle a party to bring mandamus, he must not only be possessed of a clear legal right to have an official duty performed but he must be without any other adequate remedy to compel the performance of that duty.

If there is any other remedy whereby the adverse claimants, the real parties in interest, can litigate the question of ownership, mandamus is inappropriate and under settled authority should be denied. In the case of *Stannard* v. *Atlantic Terra Cotta Co.* (138 App. Div. 867) the sort of action which has been brought here seems to have been clearly sustained in principle. It is not important that the Comptroller or any officer of the State has not been made a party, since as the court said in effect in the *Stannard* case, presumably the Comptroller, being an officer of the State government, will respect a decree determining the rights of the parties. This is in conformity with the principle of the declaratory judgment which has been adopted in this State. (Civil Practice Act, § 473; Rules of Civil Practice, rules 210–214.)

The judgment should be affirmed, with costs.

Judgment unanimously affirmed, with costs.