(96 Misc. Rep. 490)

### PEOPLE ex rel. HEINRICH v. TRAVIS, State Comptroller.

(Supreme Court, Special Term, Albany County.   August 23, 1916.)

1. STATES ☞173—EXPENSES AND APPROPRIATIONS—AUDIT—CONSTITUTIONAL AND STATUTORY PROVISIONS.

Const. art. 3, § 19, declares that the Legislature shall not audit any account against the state; section 21 declares that no money shall be paid out of the state's funds except in pursuance of an appropriation law, and that every such law shall distinctly specify the sum appropriated and the object thereof; and article 7, § 6, declares that neither the Legislature nor any person acting in behalf of the state shall audit or pay any claim which, as between citizens of the state, would be barred by lapse of time.  State Finance Law (Consol. Laws, c. 56) § 4, subds. 3, 4, require the state comptroller to audit the claims of all persons against the state; section 21 provides that he shall require persons receiving moneys of the state to render statements to him; section 22 requires that he shall state an account against any one receiving money from the state for which he has not accounted when required; and section 23 provides that he shall examine and audit all accounts rendered.  Laws 1912, c. 541, appropriated money and appointed an exposition commission and provided that the money should be paid upon requisition signed by the commission's chairman, etc., accompanied by an estimate of the expenses to which the money was to be applied.  Held, on mandamus by a citizen, that the comptroller was required to audit the expenses of the commission, although the money had been spent.

[Ed. Note.—For other cases, see States, Cent. Dig. § 163; Dec. Dig. ☞173.]

2. STATES ☞173—APPROPRIATIONS—STATUTES—IMPLIED REPEAL—REPUGNANCY.

Laws 1912, c. 541, appropriating money and appointing an exposition commission, and requiring the money to be paid upon a requisition signed by the chairman, etc., of the commission, accompanied by an estimate of the expenses to which the money was to be applied, did not impliedly repeal the State Finance Law, requiring an audit, on the ground of repugnancy, since that law, read with it, supplied the omission of the requirement of an audit.

[Ed. Note.—For other cases, see States, Cent. Dig. § 163; Dec. Dig. ☞173.]

3. STATUTES ☞149—REPEAL—IN GENERAL.

A law, once enacted, stands until it has been repealed, and can be repealed directly by reference to it in a later enactment, or by implication.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 218; Dec. Dig. ☞149.]

Motion for peremptory writ of mandamus by the People of the State of New York, on the relation of Frederick W. Heinrich, against Eugene M. Travis, as Comptroller of the State of New York.  Writ allowed.

Edward H. Wilson, of New York City, for the motion.

Egburt E. Woodbury, Atty. Gen., and Wilber W. Chambers, Deputy Atty. Gen., opposed.

HASBROUCK, J.  [1-3] For the purpose of participating in the Panama-Pacific Exposition at San Francisco in 1915 the state appropriated $700,000, and appointed a commission "to encourage and pro-

mote a full and complete exhibit," consisting of 18 citizens—15 men and 3 women. The moneys were required to be paid, by chapter 541 of the Laws of 1912,

"upon a requisition signed by the chairman and vice chairman of the commission, accompanied by an estimate of the expenses for the payment of which the money so drawn is to be applied."

Within 90 days after the close of the exhibition the commission was required to make a report to the comptroller of the disbursements made by it. The time in which this report might be made was extended by law until June 30th last past. A citizen has made application to the comptroller to have him audit the expenditures of the commission. The comptroller has refused such request, and has exhibited in support of the position taken by him the opinion of the Attorney General of the state, which states that under the terms of the above law of 1912 the comptroller is without power to audit the said expenditures. The language of the Attorney General is in part:

"The act [the law of 1912] itself gives to the comptroller no authority whatever. It is a special act, complete in itself, providing a complete plan for the accomplishment of the purpose to which the state was committed by its passage. No provisions of any general law relating to the general powers of the comptroller can be extended to cover the expenditures of the commission."

If there were no other law on the subject save that particular act, or if that act constituted the whole law on the subject, there would be excellent reason for the position taken in the premises by the comptroller and the Attorney General. Opposed, however, to their position, first stands the Constitution itself, which provides, according to the interpretation put upon it by the Court of Appeals, that the moneys of the state may not under any circumstances be authorized to be paid without audit. Says Chief Judge Parker, in the case of People ex rel. Grannis v. Roberts, 163 N. Y. 74, 57 N. E. 100, being the same case relied upon by the comptroller and Attorney General:

"In the first place it should be noted that the Constitution contemplates that the moneys of the state should not be paid out without an audit, and the Legislature is deprived of the power to audit. Constitution, art. 3, §§ 19 and 21; article 7, § 6. Two facts must exist before any of the funds of the state can be paid out: First, an appropriation by the Legislature; and, second, an audit by such authority as the Legislature may create for the purpose."

Opposed, also, to the position taken by the comptroller and Attorney General are the provisions of the State Finance Law, a revision of the laws which for nearly a century have defined the powers of the comptroller. Among other provisions are:

Section 4: *"Duties of comptroller.* The comptroller shall: * * * Subdivision 3. Examine, audit and settle the accounts of all public officers and other persons indebted to the state, and certify the amount or balance due thereon. Subdivision 4. Examine, audit and liquidate the claims of all persons against the state, if payment thereof out of the treasury is provided for by law."

Section 21: *"Rendition of accounts.* The comptroller, from time to time, shall require all public officers and other persons receiving moneys or securities, or having the care and management of any property of the state, of which an account * * * is required to be kept in his office, to render statements thereof to him."

Section 22: *"Statements of accounts not rendered.* The comptroller shall state an account against every person who receives moneys belonging to the state for which he does not account when required, charging him with the amount received according to the best information which the comptroller may have in regard thereto."

Section 23: *"Statements of accounts rendered.* The comptroller shall immediately examine the accounts rendered by every public officer or other person receiving moneys belonging to the state, with the vouchers, and audit, adjust and make a statement thereof. * * * "

Notwithstanding the opposition of these laws, the idea seems to prevail among some persons that, because the money has already been spent, therefore it is beyond "audit." I am not impressed with this objection. The State Finance Law above quoted contemplates accounting for moneys received, as well as for payment by the state for services or materials furnished to it. It is frequently necessary, in the performance of the large constructive undertakings of the state and in carrying on enterprises beyond its borders, to advance the state's funds to make payments thereon. I see no reason why an audit may not be had as well of a payment made as of a claim to be paid.

An examination of the Grannis Case, above referred to, shows that section 5 of chapter 794 of the Laws of 1896 provided that the superintendent of public works should upon the certificate of the state engineer pay to the contractor a certain percentage of the value of the work performed. The contractor obtained the certificate, but the comptroller refused to issue a warrant to pay the amount. The contractor sued out a writ of mandamus to compel the comptroller to pay upon the certificate of the engineer. In the Court of Appeals it was finally decided that the comptroller could not be mandamused to pay the amount certified by the engineer, but had the power to challenge the certificate.

This Grannis Case, the more it is considered, the more it appears to be authority against the comptroller who cites it. That case was similar in several respects to the one at bar. The commissioners of the exhibition were empowered to make a requisition upon an "estimate." The only difference between a "certificate" and an "estimate" appears to be that one is made with a degree of exactitude, and the other roughly or approximately.

If the comptroller had been guided by the opinion in the Grannis Case, and the "estimate" contained items beyond the power of the commission to purchase, or unreasonable in amount or inferior quality, he might have refused to such an extent under the powers conferred upon him by law to comply with the requisition. However, the fact that the moneys were advanced in pursuance of the requisition and have already been expended does not leave the state remediless. Such officers and persons as have received the moneys of the state the comptroller can compel to render an account thereof, or, if they will not do so, can state an account against them, or, if they have rendered an account or report such as the statute requires of the commissioners, he may audit it. If the claim of the state, ascertained by an audit, be not paid, it is the duty of the comptroller to hand the account over to the Attorney General for prosecution. State Finance Law, supra.

The exact point made by the Attorney General upon the hearing of the motion for the writ was, as heretofore stated, that the comptroller was without the power of audit in the premises. In other words, he was divested of such power by the particular provisions of chapter 541 above referred to. That is simply a statement that the latter law, chapter 541, repealed the provisions of the State Finance Law so far as they related to the audit of the accounts of the commissioners of the exhibition. A law once enacted stands until it has been repealed. It can be repealed directly by a pointed reference to it in a later enactment, or it can be repealed by implication. There is no contention here of the expressed repeal of the State Finance Law so far as it affects the expenditures of this commission. It would appear that the contention is, as inferred from the language of the Attorney General's opinion, that there was a repeal by implication. Such a repeal, however, never takes place where it is possible to give effect to each of two statutes relating to the same subject. Between the State Finance Law, conferring the power of audit upon the comptroller, and the statute requiring the comptroller to pay moneys over to the commissioners upon their estimate, and requiring such commissioners to file a report of how they spent it, there exists no repugnancy. Read together, there is a scheme which renders the appropriation act constitutional because what otherwise is wanting in chapter 541, Laws of 1912, is supplied in the Finance Law, viz. "an audit."

The purpose of the statute in requiring the money to be paid to the commission in advance of an audit is to facilitate carrying on the exhibition; and the requiring of the making of a report within 90 days after the close of the exhibition is to assure the preservation of the record upon which the comptroller may act.

The petition states that the commissioners exceeded the powers conferred upon them by the act, in that they fitted up the state building erected by them with sleeping rooms and living accommodations; in that, being allowed their "actual and necessary expenses," they used the state building to live in themselves and to entertain in on a grand scale; in that they paid the traveling and entertainment expenses of state officials and several private citizens to and from the exhibition; in that they paid the traveling and entertainment expenses for themselves and other citizens for visiting other places than the exhibition; in fine, that the money of the state was in many instances improvidently and illegally expended. With the question as to whether such expenditures were legal or illegal the court now has nothing to do.

As I read the statute, the determination of the propriety and reasonableness of the expenses of the commission is with the comptroller. The state reposes in him the duty of carefully guarding the moneys of the state against dissipation by persons lacking interest in its welfare or wanting in a deep sense of patriotic responsibility. As I view it, the comptroller was erroneously advised and has failed to apprehend the duty cast upon him by the law. The plain requirements of the law are that these expenditures should be audited by the comptroller, and that the provisions of the State Finance Law should be complied with.

Writ allowed, with $50 costs.