THE PEOPLE OF THE STATE OF NEW YORK ex rel. FREDERICK W. HEINRICH, Respondent, v. EUGENE M. TRAVIS, as Comptroller of the State of New York, Appellant.

Third Department, November 22, 1916.

State officers — expenditures for expenses of Commissioners at the Panama-Pacific Exposition — chapter 541, Laws of 1912, not unconstitutional — mandamus — when writ does not lie to compel Comptroller to reaudit expenses of Commissioners.

Chapter 541 of the Laws of 1912, which, among other things, appropriated money for the representation of the State of New York at the Panama-Pacific Exposition and provided that the actual necessary expenses of

the Commissioners should be paid therefrom on the warrant of the Comptroller, issued upon a requisition signed by the chairman and vice-chairman, accompanied by an estimate of expenses, etc., and requiring the Commission to make a verified report to the Comptroller of its disbursements, is not a bill which attempts to audit or allow a "private claim" against the State, contrary to section 19 of article 3 of the Constitution, and was within the power of the Legislature to enact.

While, *it seems,* that it was the duty of the State Comptroller to check up the accounts of moneys expended by the Commissioners for their expenses, mandamus does not lie at the suit of a taxpayer to require the Comptroller again to examine into the accounts of the Commission and to audit and adjust the same and report to the Attorney-General any unauthorized expenditure of the appropriation.

Mandamus does not lie to discover dishonesty and fraud, but merely to compel the performance of strictly legal duties, and if there is any doubt as to the relator's right to the writ it should not issue.

Thus, where the Comptroller has complied with all duties imposed upon him by the act aforesaid, the writ does not lie to compel him to reaudit the accounts of the Commissioners, as they were given large discretionary power as to expenditures, and the Comptroller was vested with no power to limit or control said discretionary powers.

*It seems,* that if the public funds were unlawfully expended, the remedy is by action under section 1969 of the Code of Civil Procedure.

An audit is not a remedy to recover money, and the court will not compel the State Comptroller to reaudit the expenditures of said Commissioners when, being the auditing officer, he is accused of participating in the alleged illegal expenditure, for the court will not compel him to be a judge in his own case.

While mandamus lies to compel the Comptroller to act, it does not lie to direct him how to act, nor will the court instruct him in advance as to how he shall perform his duties.

Although the Comptroller has the duty of audit under the State Finance Law, his judgment and discretion cannot override that of the Commissioners.

Cochrane, J., dissented.

Appeal by the defendant, Eugene M. Travis, as Comptroller, from an order of the Supreme Court, made at the Ulster Special Term and entered in the office of the clerk of the county of Albany on or about the 9th day of September, 1916, granting a peremptory writ of mandamus herein.

*Egburt E. Woodbury, Attorney-General* [*Wilber W. Chambers, Merton E. Lewis* and *C. T. Dawes, Deputy Attorneys-General,* of counsel], for the appellant.

*Edward H. Wilson,* for the respondent.

WOODWARD, J.:

The relator, a citizen, taxpayer and elector of the State, has applied for and obtained a peremptory writ of mandamus commanding the State Comptroller to examine the accounts of the Panama-Pacific Exposition Commission, or other persons who received any part of the appropriation of the Legislature for the exposition, under the provisions of chapter 541 of the Laws of 1912, and subsequent acts under which appropriations aggregating $700,000 were made. The Comptroller, who acted in the matter under the advice of the Attorney-General, appeals from the order.

The Legislature of 1912 enacted " An act to provide for the representation of the State of New York, at the Panama-Pacific International Exposition at San Francisco, California, celebrating the opening and commercial use of the Panama canal, and making an appropriation therefor," under which there was an appropriation of $250,000, subsequently twice increased, until the aggregate of the appropriations reached $700,000, all of which were to be governed by the provisions of the original act. (See Laws of 1913, chap. 347; Laws of 1914, chap. 246; Laws of 1916, chap. 646, § 6, p. 2465.) The original act provided for a commission of fifteen members, who were commanded by the act to " encourage and promote a full and complete exhibit of the commercial, educational, industrial, artistic, military, naval and other interests of the State, and its citizens, at such exposition and celebration, and shall provide, furnish and maintain during the exposition a building or buildings for a State exhibit and for the official headquarters of the State, and for the comfort and convenience of its citizens and exhibitors." The members of the commission were not to receive any compensation, but were allowed their " actual necessary expenses incurred while in discharge of duties imposed upon them by the commission," and an appropriation of $250,000 was made. This money was to be " paid by the Treasurer on the warrant of the Comptroller issued upon a requisition signed by the chairman and vice-chairman of the commission, accompanied by an estimate of the expenses for the payment of which the money so drawn is to be applied." (Laws of 1912, chap. 541, §§ 2, 3, 5.) It was further provided in the same section 5 that " within

ninety days after the close of the exposition, such commission shall make a verified report to the Comptroller of the disbursements made by it, and shall return to the State treasury the unexpended balance of money drawn in pursuance of this act." The time to make this report was extended by the Legislature (Laws of 1916, chap. 16, amdg. said § 5), and the same has been duly made and filed, and the Comptroller tells us in his affidavit, made in the proceeding, that "from time to time as such statements or verified reports of the disbursements of the commission were received by the Comptroller's office they were verified as to mathematical accuracy and the correctness of balances stated, and it was ascertained that each item of expenditure was accompanied by evidence of payment."

By the order now before us for review, the Comptroller is directed to "examine the accounts rendered by the Panama-Pacific Exposition Commission or by any person or corporation having received any part of the appropriations of seven hundred thousand ($700,000) dollars for the purposes of the Panama-Pacific Exposition, with the vouchers thereof, and to audit, adjust and make a statement thereof; to require all persons who have received moneys of the State out of said appropriations who have not heretofore properly accounted therefor, to render statements thereof to him and, if necessary, to examine them upon oath before him; and upon such statement of such persons to state an account against any such person or persons who shall have received any money out of said appropriation unauthorized by law and to transmit the said account to the Attorney-General of the State of New York for prosecution, all in accordance with the statute in such case made and provided;" and fifty dollars costs are imposed.

The purpose of a writ of mandamus is not to discover dishonesty and fraud, but to compel the performance of strictly legal duties, and if there is any fair question about the relator's right to have the duty performed the writ should not issue. The learned court at Special Term (96 Misc. Rep. 490) seems to have proceeded upon the theory that no funds of the State could be legally disbursed without the duty falling upon the Comptroller to audit the accounts, and that this duty persists even though the funds have been paid out. In support of this

theory we are cited to the case of *People ex rel. Grannis* v. *Roberts* (163 N. Y. 70, 74), where the court, in dealing with the facts then before it, and which related to a private claim against the State on account of the barge canal, says: " In the first place it should be noted that the Constitution contemplates that the moneys of the State should not be paid out without an audit, and the Legislature is deprived of the power to audit. (Constitution, article III, sections 19 and 21; article VII, section 6.) Two facts must exist before any of the funds of the State can be paid out, first, an appropriation by the Legislature and, second, an audit by such authority as the Legislature may create for the purpose." If we look to the provisions of the Constitution, to which we are cited by the court in the case relied upon, we shall find that section 19 of article 3 simply provides that " the Legislature shall neither audit nor allow any private claim or account against the State, but may appropriate money to pay such claims as shall have been audited and allowed according to law." There is no private claim involved in the matter now before us; chapter 541 of the Laws of 1912 created a public commission, charged with certain large discretionary duties, and appropriated a sum of money which was to be advanced " upon a requisition signed by the chairman and vice-chairman of the commission, accompanied by an estimate of the expenses for the payment of which the money so drawn is to be applied " (Laws of 1912, chap. 541, § 5), and, unless there is some other provision of the Constitution which requires an audit, it must be clear that the Legislature was not denied the power to make the appropriation under the provisions of chapter 541 of the Laws of 1912, and to make the same available upon the requisition of the official representatives of this commission. Section 21 of article 3 of the Constitution merely provides that " no money shall ever be paid out of the treasury of this State or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law," but there is no requirement that the expenditures provided for in the appropriation shall be audited by any one. And section 6 of article 7 goes no farther than to provide that " neither the Legislature, Canal Board, nor any person or persons acting in

behalf of the State, shall audit, allow or pay any claim which, as between citizens of the State, would be barred by lapse of time."

It will thus be seen that *People ex rel. Grannis* v. *Roberts* (*supra*) cannot be an authority for the broad proposition stated, though, undoubtedly, stating the law of that case correctly. The Legislature could not audit or allow a private claim against the State, but it could make an appropriation by law to pay the expenses of its own commission and the members thereof, and it could make that appropriation available upon the estimates made by its commissioners, and it clearly had a right to provide how the commissioners should account for the sums expended, and what evidences of such expenditures should be preserved in the public offices of this State. It was probably the duty of the Comptroller to check up the account as stated by the commission, and to see that the amount turned back into the State treasury corresponded with the statement of expenditures as furnished by the commission, but the suggestion that he had any authority to review the discretion delegated to the commission in making requisitions, or in accounting for the expenditures made, is without foundation in the laws of this State as we read them. This was a special act for a particular public purpose; it provided all of the details which the Legislature thought proper in a commission of this character, and the only limitation which was imposed upon the commission was to use the funds for the general purposes indicated by the provisions of the statute in good faith, conforming, of course, to the conditions which were specifically imposed. That is, in order to draw upon the fund appropriated it was necessary for the commission to make a requisition upon the Comptroller, accompanied by an estimate of the expenditures for the payment of which the money so drawn is to be applied, and within ninety days of the closing of the exposition, afterwards extended to June 30, 1916, it was made the duty of the commission to make a report to the Comptroller of the disbursements made by it, and to return to the State treasury the unexpended balance of the money drawn in pursuance of this act. This was the only and exclusive audit provided for by the Legislature for this particular fund. No

complaint is made that these provisions of the statute were not complied with, and, as no duty was imposed upon the Comptroller in respect to the uses and purposes for which the funds should be used, and as he was given no power to limit, regulate or control in any manner the discretionary powers conferred upon the commission, it must be plain that no useful purpose could be served by an audit of the account as it is now filed in the office of the Comptroller.

The law not having made it the duty of the Comptroller to pass upon this particular account in any manner, except inferentially to determine the amount of the unexpended balance, which was to be returned to the State treasury, it must be obvious that there is no such clear and precise legal duty owing by the Comptroller as to justify the issuance of a writ of mandamus. If the commission has acted in bad faith; if moneys have been expended outside of the scope of the appropriation, the statutes of this State provide an adequate remedy. (Code Civ. Proc. § 1969.) It is peculiarly improper, in the present case, that the Comptroller, who is alleged to have shared in some degree in the improper use of the funds of the State, should be called upon to undertake an audit such as is directed by the order here under review. The relator has mistaken his remedy; there is an adequate remedy at law for any of the matters which are complained of, and it is an abuse of the writ of mandamus to make use of it in the manner directed by the order.

The order appealed from should be reversed, with ten dollars costs and disbursements.

All concurred, KELLOGG, P. J., in memorandum, in which all concurred except COCHRANE, J who dissented and voted for affirmance.

KELLOGG, P. J. (concurring):

I agree that under the circumstances shown a further audit by the Comptroller can do no possible good to any one. An audit is not a remedy to recover money, and in this case it could furnish no reasonable aid in an action seeking such relief. The claim that the audit may furnish *prima facie* evidence in

an action to recover the money is of little force when the auditing officer is accused of participating in the alleged improper expenditures. The court will not compel him to be a judge in his own case, and could not consider favorably the decision of a judge in his own case.

By a mandamus the Comptroller may be compelled to act, but is not directed how to act. The law and the practice of the Comptroller's office determines how he will make an audit, and it is not necessary or proper for the court to instruct him in advance how he shall perform his duties. As was said by Judge VANN in *People ex rel. Harris* v. *Commissioners* (149 N. Y. 26): "That would substitute the judgment or discretion of the court issuing the writ for that of the person or persons against whom the writ was issued." The order, therefore, is erroneous. If any practical result could follow the court might modify it. But no benefit can come to any one from a further audit.

I think the Comptroller has a certain duty to audit in such cases (State Finance Law, §§ 4, 21, 23), but his judgment and discretion cannot override the judgment and discretion of the commission. He cannot as a judge pass upon the good faith or good judgment of the commission. In this case he has, under all the circumstances, made all the audit of the report of the commission that can properly be required. In the exercise of a sound discretion the writ should not have been granted.

All concurred, except COCHRANE, J., who dissented and voted for affirmance.

Order reversed, with ten dollars costs and disbursements, and writ dismissed, without costs.