[No. 12131.  Department One.  July 14, 1914.]

THE STATE OF WASHINGTON, *on the Relation of T. W. Long*
*et al., Plaintiff*, v. THE SUPERIOR COURT FOR
LEWIS COUNTY *et al., Respondents.*[1]

EMINENT DOMAIN — PARTIES — STATUTORY PROCEEDINGS—LESSEES.
In providing the procedure for the exercise of the power of eminent
domain, it was competent for the state, by Rem. & Bal. Code, § 921,
to require service only upon owners and persons interested in the
land "so far as the same can be ascertained from the public records;"
especially in view of Id., §§ 929-931 providing a method for determin-
ing conflicting interests or claims to the award; hence it is not
necessary to bring in as parties defendant, lessees who failed to
record their lease.

SAME—PROCEEDINGS—AWARD—APPORTIONMENT—RIGHTS OF LES-
SEES.  In eminent domain proceedings, where the award was for the
full value of the land, lessees who failed to record their lease and
therefore were not necessary parties, under Rem. & Bal. Code, § 921,
have no claim against the petitioner, but must seek their proportion
of the award under Id., §§ 929-931.

SAME — AWARD — PARTIES CONCLUDED — LESSEES WITH NOTICE.
Where record owners of land defended eminent domain proceedings
as holders of the full legal title, lessees who had not recorded their
lease, and had not been made parties, are bound by the award, where
they had notice of the suit and were present at the trial without as-
serting any claim or interest in the land.

Application filed in the supreme court July 10, 1914,
for a writ of certiorari to review a judgment of the superior
court for Lewis county, Rice, J., entered June 30, 1914,
pending condemnation of a leasehold.  Denied.

*Hayden, Langhorne & Metzger* and *W. E. Bishop,* for
relators.

*F. M. Dudley* and *Gus L. Thacker,* for respondents.

CHADWICK, J.—To state the facts in this case as they are
presented to us by the petition of relators would unneces-

[1]Reported in 141 Pac. 906.

sarily extend the limit of this opinion. In order to meet the legal questions suggested by counsel, it is enough to say that the respondent Puget Sound & Willapa Harbor Railway Company, a corporation, brought an action in the superior court of Lewis county seeking to condemn a right of way over lands owned by relators T. W. Long and Mrs. T. W. Long. The proceeding was prosecuted to a final judgment awarding damages in the sum of $4,750. This amount was paid into the registry of the court and a decree of appropriation taken. It thereupon came to the notice of respondent railway company that the relators T. J. Long and Minnie Long, his wife, claimed an interest in the lands condemned. The respondent railway company filed a petition praying for an order of the court directing the money to be withheld until the relative rights of the owners and the lessees could be adjusted between themselves. The prayer of this petition was granted, and the court further directed that the respective relators should not in any way interfere with the prosecution of the work of the railway company over and across the lands condemned. Upon the petition of the relators, this court issued an order directing the judge of the lower court and the associate respondent to appear and show cause why further proceedings on the part of the railway company should not be stayed pending an orderly condemnation of the leasehold interest. The lessees were in possession of the property but their interest was not disclosed by any public record. No further reference to the facts is necessary.

Among the propositions urged by respondents is that the alleged lease is void, in that it purports to be a demise for a period of three years and is neither witnessed nor acknowledged as required by Rem. & Bal. Code, § 8802 (P. C. 295 § 1). We shall not discuss this question but will go directly to the real merits of the case.

So far as we have been able to make ourselves familiar with the statutes of other states in the time we have given our-

selves for the preparation of this opinion, the statute of the state of Washington defining a procedure in eminent domain proceedings is *sui generis*. The general rule is that all parties who have an interest in the property should be made parties to the condemnation proceeding, and it is a rule quite as general that a lessee has an estate of which the law will take notice and is entitled to compensation if the reversion is taken in the exercise of the sovereign right of eminent domain. Our statute, which, as we have stated, is neither like the general rule nor the usual statutory provisions covering such cases, provides that a petition in condemnation proceedings shall describe the property with reasonable certainty, and contain "the name of each and every owner, encumbrancer or other person or party interested in the same or any part thereof, so far as the same can be ascertained from the public records." Rem. & Bal. Code, § 921 (P. C. 171 § 173). This statute has never been construed by this court. However, we were called upon to pass upon a similar statute in the case of *Gasaway v. Seattle*, 52 Wash. 444, 100 Pac. 991, 21 L. R. A. (N. S.) 68. We there held the proceeding to be sufficient, it being brought against "the owners and occupants and the persons having an interest therein so far as they were known to the officer signing the petition or as they appeared from the records in the office of the county auditor." We have no doubt of the soundness of our views in that case, for, as was there said, reference to fundamental principles is often times most helpful in the solution of unusual and unique propositions of law. This proceeding is not an admeasurement of private interests. The exercise of the power of eminent domain is the exercise of the sovereign power of the state. Having original power to take without compensation, it is only in virtue of the constitution, art. 1, § 16, that the sovereignty, whether the power is exercised by the state or through the mediumship of its instrumentalities exercising public functions, is bound to make compensation at all. The state may define any procedure that does not violate the con-

stitutional guaranty, and it is well within the power of the
state to provide for its own protection that one condemning
property in aid of the public functions or service of the state
shall not be required to go beyond the public records in de-
termining proper or necessary parties to the proceeding.
The state has provided a system of public records, the ob-
ject and purpose of which is to give the citizen the oppor-
tunity and the privilege to publish to the world his interest
or claim of interest in property held under the protection of
its laws.   It can work no hardship if an encumbrancer or a
lessee of real property is required to make use of that record
under penalty of having his rights foreclosed as against the
state or its agents in an action in which the sovereignty of the
state is asserted.   If this were not the rule, the functions of
the state might be delayed or paralyzed at the will of the citi-
zen.   One undisclosed interest might follow another, whereas
it is the purpose of the law, as defined by the statutes, to
convey the whole title unincumbered in one proceeding.   To
that end, the statute requires encumbrancers and lessees of
record to be made parties, and further provides for a method
of determining such conflicting interests or claims as may
arise after the award has been paid into court.   Rem. & Bal.
Code, §§ 929, 930, 931 (P. C. 171 §§179, 180, 180a).   The
purpose of our statute is manifest.   We find that purpose
nowhere more clearly stated than in the case of *Cornell-An-
drews Smelting Co. v. Boston & P. R. Corp.*, 209 Mass. 298,
95 N. E. 887:

"First, to have the interdependent rights of all settled at
the same time; and secondly, to establish the principle that
the amount of damages to be paid where the same land is
owned by several persons shall be determined as if it had been
owned by one person in fee. . . . . In *Edmands v. Boston,*
108 Mass. 535, 544, Wells, J., said: 'The situation of the
estate and the manner of its occupation are doubtless to be
taken into consideration in estimating the injury caused by
disturbing that occupation.   But between the public and the
landowner it is but one estate.   The public right is exercised

upon the land itself, without regard to subdivisions of interest by which the subject is affected through the various contracts of individual owners.   The public cannot be expected to forego its right to take property for public uses because the exercise of that right will defeat private contracts; nor is it reasonable that losses arising from the failure of such contracts which otherwise might furnish grounds of damage between the individual parties, should measure the compensation to be rendered for the property so taken.   Such a rule would seriously impair the public rights.   A fair compensation for the property taken and injury done, ascertained by general rules, is a substitute to the owners for that of which they are deprived.   That is the whole of the transaction with which the public is concerned.   The apportionment is merely a setting out to the several owners of partial interests of their corresponding rights in the fund which has been substituted for the property taken.'   In *Burt v. Merchants' Ins. Co.*, 115 Mass. 115, Gray, C. J., said: 'But no contracts between the owners of different interests in the land can affect the right of the government to take the land for the public use, or oblige it to pay by way of compensation more than the entire value of the land as a whole.' "

See, also, *Moroney v. State*, 67 Misc. Rep. 58, 124 N. Y. Supp. 824.

In the *Matter of Broadway Surface R. Co.*, 34 Hun 414, the supreme court of the state of New York had occasion to consider chapter 252 of the laws of 1884, § 5.   It was there provided that notice should be personally served upon the property owner by delivering the same to him "or his agent or representative, as such owner, agent or representative appears upon such assessment-roll."   It was contended that inasmuch as a very considerable portion of the property sought to be taken was held by lessees to whom no notices had been directed, the proceeding must fail.   The court said:

"But none of these affidavits show that the names of those tenants appear on the assessment-roll as occupants or owners, nor is their interest in any case shown to be assessed on such roll for the purposes of taxation. . . . . The statute does not . . . . require that occupants and lessees whose names are not on the assessment-rolls shall be served.   They

are regarded by the statute as represented by the persons assessed upon the roll for the full valuation of the property which, of course, includes their interests, and for that reason their interest, in the contemplation of the statute, is represented in and by the assessed ownership."

The text of that case is consistent with the rule announced in 2 Lewis on Eminent Domain (3d ed.), § 719.

The decision in *North Coast R. Co. v. Hess*, 56 Wash. 335, 105 Pac. 853, does not make it clear whether the omitted lien claimants were record parties at the time the proceeding was begun. So far as this case is concerned, it can make no difference whether they were or not. It is enough that this court there declared what is consistent with the general rule, as we understand it to be, as well as sound reason and a proper interpretation of our statute, that, where the judgment is for the full value of the land appropriated, it being taken as unincumbered property, the apportionment of the fund as between rival claimants thereto is a matter of general equity of which the court might take notice and settle without reference to the statute.

Relators plant themselves upon the text of 2 Lewis on Eminent Domain (3d ed.), § 525:

"That life tenants, lessees and reversioners are entitled to compensation has never been doubted, and they must be made parties in order to divest their interests. The duration of the lease is immaterial and parol leases from year to year are as much within the protection of the constitution as longer terms, evidenced by more formal contracts."

The text, while stating a general rule, must not be accepted without such qualifications as are imposed by the statute. This court, in common with others, has declared these proceedings to be *in rem. Gasaway v. Seattle, supra.* Jurisdiction in such cases does not depend upon the disclosed identity of parties defendant, but upon the subject-matter and an opportunity to be heard in the exercise of the court's due process upon the most effective notice possible to be given.

"The state has power to thus provide for an adjudication of adverse rights or claims of persons in or to real estate situate within its borders, even though such claimants may be unknown and are without the jurisdiction of the court. Titles to real estate should not be subjected to continuous clouds. A state is under no compulsion to suffer titles to real estate situated within its borders to remain clouded for an indefinite period for the want of a proper method of serving process upon unknown claimants, or a proper procedure to quiet the same." *Phillips v. Tompson*, 73 Wash. 78, 131 Pac. 461.

Our statute provides that the proceeding shall run against the record owners; other statutes provide that it shall run against the owners if they be known, or if not known, that a showing of diligence be made; others, that the proceeding shall be prosecuted as an ordinary civil action. From an inspection of the statutes of many of the states, we are satisfied that the object of the law is to save to the owner and those interested the full cash value of the property taken; and of our own statute, to provide for the taking of the property without reference to the conflicting interests of the several claimants. This holding does not deny the owner of a leasehold the right of compensation, nor does it deny the doctrine of the case of *Gluck v. Mayor etc. of Baltimore*, 81 Md. 315, 32 Atl. 515, 48 Am. St. 515, which is confidently relied on. Rem. & Bal. Code, §§ 929-931, protect the interests of a lessee in every practicable way. When, therefore, a lessee has not made his interest to appear of record, and the court has made an assessment in gross, the claim of the lessee is not against the petitioner but against the fund. He may appear in the original proceeding; he may ask an apportionment of the award under §§ 929-931; he may proceed in equity independent of the statute (*Harris v. Howes*, 75 Me. 436); or by way of an action for money had and received. 2 Lewis, Eminent Domain (3d ed.), § 719. The lessees have not seen fit to pursue any of these remedies. Inasmuch as they might have done so, and inasmuch as the petitioner might, had it known of their interest, have made them parties, it

follows that, having present notice of their interest, it may compel them to come in and take their apportionment·of the gross award, under § 930 of the Code. Procedure in eminent domain is statutory. ·When the petitioner has followed the statute, it has discharged its duty to the landowner, and it is not bound to answer in an action at law or in equity to any one claiming a misdirection or illegal apportionment or award of the fund paid into the court. It is not responsible for the delinquencies of the parties claimant, nor is it answerable except upon appeal for the errors or omissions of the court. *Carton v. Seattle*, 66 Wash. 447, 120 Pac. 111; *Carton v. Seattle*, 74 Wash. 375, 133 Pac. 596; *Silverstone v. Harn*, 66 Wash. 440, 120 Pac. 109.

The case of *Little Rock & Ft. Scott R. Co. v. Allister*, 62 Ark. 1, 34 S. W. 82, is cited as holding contrary to this doctrine. That case can have no bearing under our statute. The statute of Arkansas makes an eminent domain proceeding obedient to the rules of pleading and practice prescribed for the government of proceedings in the circuit court. The case, if otherwise sound, can be sustained because under such a statute all parties in interest must be made parties, and for the further reason that no provision is made for the apportionment of a gross award.

We think it is clear, under the legal principles applicable to the facts as stated, that the lessees have no present claim against the petitioner. But if it is still contended that they are not foreclosed or that they are not bound to take an apportionment of the present award, we think that it cannot be successfully asserted that the lessees in the *instant case could*, in any event, compel the petitioner to institute a proceeding against them. The record owners appeared and defended as the owners of the full fee simple title. It is asserted, and is not denied, that the relator lessees were present in the court room and had knowledge and notice of the proceeding. They knew the statute law of the state. The object of the law is to

give notice to those having a disclosed interest.  It does not deny the right of those having an undisclosed interest to be heard at any stage of the proceeding.  The object of notice is notice, and the relator lessees could have had no more notice and it would have been no more incumbent upon them to assert their interest in the original proceeding or under the statutory provision for the apportionment of the award had they been made parties to the action and been served with a formal written notice of the hearing.  If the present petition sounds in equity, the relators do not come with clean hands.  If their right is a legal right, it is measured and amply protected by the statutes which we have referred to and discussed.

The motion to quash filed on behalf of the respondent judge of the superior court, and the demurrer filed on behalf of the Puget Sound & Willapa Harbor Railway Company, are severally granted and an order will be entered denying the prayer of the relators' petition and dismissing this proceeding.

CROW, C. J., MAIN, and ELLIS, JJ., concur.