**CITY OF ASHLAND, Kentucky, a Municipal Corporation, Appellant,**

**v.**

**Barger KITTLE et al., Appellees.**

**David W. PHIPPS et al., Cross-Appellants,**

**v.**

**CITY OF ASHLAND, a Municipal Corporation, Cross-Appellee.**

Court of Appeals of Kentucky.

June 23, 1961.

Arthur T. Bryson, Jr., Asst. Corp. Counsel, A. W. Mann, Corp. Counsel, Ashland, for appellant and cross-appellee.

John L. Smith, Catlettsburg, Robert T. Caldwell, J. G. M. Robinson, B. S. Wilson, Jr., Caldwell, Robinson & Wilson, P. H. Vincent, Ashland, for appellees and cross-appellants.

STEWART, Judge.

This action was instituted in the Boyd Circuit Court by City of Ashland to condemn certain improved real estate for use in connection with the expansion of its municipal water system. At a trial before a jury Barger Kittle and Verna Kittle, his wife, the owners of the fee, were awarded $25,000. David W. Phipps and Ann P. Phipps, his wife, and William H. Culbertson and Imogene Culbertson, his wife, the owners of a leasehold interest in the property, were given $20,000 as damages.

The city has appealed, and its chief ground for reversal is that the lower court erred when it instructed the jury to find and return separate verdicts for the values of the land and leasehold interests taken, respectively, it being contended that but one award could properly be allowed for the condemned property, as a whole, which award should then be apportioned among the different parties according to their respective rights. At the trial the city offered instructions it claimed followed this concept.

The Kittles owned two lots fronting 80 feet upon Winchester Avenue in Ashland and extending back 115 feet therefrom. They agreed to and did erect a concrete

block building upon these lots to meet the requirements specified by the Phippses and Culbertsons, their prospective tenants. In this building certain machinery was housed which manufactured ice cream; and the surface of these lots not occupied by the building was blacktopped for purposes of egress from and ingress to the building.

The lease contract entered into between the owners and the tenants was for a term of five years with the privilege to the tenants of renewing the contract at the same rental for two additional five-year terms. This provision was also in the contract: "During the life of this lease or any renewal thereof should the Lessor desire to sell the leased premises he shall first submit to the Lessees for their refusal or acceptance the price and terms offered to him for a deed of general warranty for a free and unencumbered title to the lots and improvements thereon and the subject of this lease."

The commissioners appointed to appraise the property fixed the fair and reasonable market value of the land at $13,200, and the improvements thereon at $11,000, a total of $24,200. In their report, they estimated the damages for the taking of the leasehold at $1,939.60. We have heretofore set forth the amounts the jury awarded the owners of the fee on the one hand, the tenants of the property on the other.

In Korfhage v. Commonwealth, Ky., 296 S.W.2d 476, and in the fairly recent case of City of Ashland v. Price, Ky., 318 S.W.2d 861, 862, in considering the valuing of property taken by condemnation which was impressed with a lease agreement, we recognized the general rule to be " * * * 'that, where there are several interests or estates in a parcel of real estate taken by eminent domain, a proper method of fixing the value of, or damage to, each interest or estate, is to determine the value of, or damage to, the property as a whole, and then apportion the same among the several owners according to their respective interests or estates, rather than to take each interest or

estate as a unit and fix the value thereof or damage thereto separately.' "

As pointed out in the Price case the quoted excerpt was taken from the prefatory note which appears in 69 A.L.R. at page 1263. Many other authorities upholding this same rule are mentioned in the Korfhage and Price cases.

The lower court did not follow this rule, but, on the contrary, erroneously submitted instructions which allowed the jury "to take each interest or estate as a unit and fix the value thereof or damage thereto separately." In such a situation it is impossible to determine whether the separate awards should be added or the one subtracted from the other.

Also, the instruction given which told the jury to find the value of the tenants' claim under the leasehold did not set forth the proper standard for their guidance. It reads: "The jury will find for the defendants (the Phippses and Culbertsons) such sum as you may believe from the evidence represents the fair and reasonable value of the leasehold taken at the date taken, to wit, 6th day of September, 1956, and the measure of value of the leasehold is the difference, if any, between the fair rental value of the property for the remainder of the term and the value of the renewal privileges *and privilege to purchase*, and the rent reserved in the lease to be paid by lessees."

Thus, it was made permissible for the jury to assess damages for an alleged deprivation of the right to purchase the property under the conditions hereinbefore mentioned. Such a claim, being a mere possibility that may or may never materialize, cannot be said to constitute an "estate" or an "interest" in the real property. In our opinion this statement of law from the annotation in 152 A.L.R., at pages 307, 310, applies to this type of claim:

"The rule seems well settled that where real property is taken for public use, a person other than the owner in fee is not entitled to compensation, or

to a share in the compensation awarded to the owner, unless he has some "estate" or "interest" in the property, a mere contractual right, without such "estate" or "interest", not being sufficient."

See also Brooklyn Eastern District Terminal v. City of New York, 2 Cir., 139 F.2d 1007, 152 A.L.R. 296; United States v. General Motors Corporation, 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311, 156 A.L.R. 390.

■ An option in a lease giving the lessee the right to purchase the fee, not exercised prior to the time the property was taken for public use, gives the lessee no interest in the real estate which is compensable in a condemnation proceeding. See Re Upper New York Bay, 246 N.Y. 1, 157 N.E. 911; 2 Nichols, Eminent Domain, sec. 5.21 (1), p. 28; 29 C.J.S. Eminent Domain § 196, p. 1101. It is reasoned in these authorities that otherwise the lessee would have the privilege of waiting until the award was made and then exercising or not exercising his option according to whether or not the amount of the award was in excess of the option price. Such an option is a contract right and nothing more. See Cornell-Andrews Smelting Co. v. Boston & P. R. Corp., 209 Mass. 298, 95 N.E. 887; Annotation, 152 A.L.R. 316–317. In the present case, the lessee did not even have an option to buy, but merely a right of first refusal, in the event the lessor decided to sell. Therefore, it was error to insert in this instruction the "privilege to purchase" as an element of damage.

As to the option to renew the lease, we might remark in passing that it is stated in 29 C.J.S. Eminent Domain § 198, p. 1105, that: " * * * a lessee for years with a covenant for renewal has such an interest as will entitle him to compensation, * * *." It was held in Re Triborough Bridge Approach, City of New York, 159 Misc. 617, 288 N.Y.S. 697, that in regard to a right to damages in a condemnation proceeding, a lease for five years with the privilege of renewals, amounting in the aggregate to 25 years, constituted a lease for 25 years. See also 2 Nichols, Eminent Domain, sec. 5.23 (4), p. 45; sec. 5.23(1), p. 40.

■ It must be remembered, however, as pointed out in New Jersey Highway Authority v. J. & F. Holding Co., 40 N.J.Super. 309, 123 A.2d 25, that proof of tenancy in condemned premises is not necessarily proof of a compensable loss. The burden is on the tenant to prove that the fair market value of his lease is greater than the rent reserved. See also City of Ashland v. Price, Ky., 318 S.W.2d 861, 863.

■ We reiterate that the jury should first fix the fair market value of the property as a whole as between the condemnor and all the defendants, and then divide the same according to the respective rights of the lessors and the lessees. See Lambert v. Giffin, 257 Ill. 152, 100 N.E. 496.

The Phippses and Culbertsons filed a cross-appeal, claiming error in the instructions. This cross-appeal appears to have been abandoned, because it was not briefed.

Wherefore, the judgment is reversed on the appeal and affirmed on the cross-appeal.