STATE OF NEW JERSEY, BY THE COMMISSIONER OF
TRANSPORTATION, PLAINTIFF-APPELLANT, v. BAK-
ERS BASIN REALTY CO., A CORPORATION OF NEW
JERSEY, *ET AL.*, DEFENDANTS, AND CORTSHIRE DE-
VELOPMENT CORP., DEFENDANT-RESPONDENT.

CORTSHIRE DEVELOPMENT CORP., PLAINTIFF-RESPON-
DENT, v. STATE OF NEW JERSEY, BY THE COMMIS-
SIONER OF TRANSPORTATION, *ET AL.*, DEFENDANTS-
APPELLANTS.

Argued January 19, 1977—Decided July 21, 1977.

*Mr. G. Frederick Blazure,* Deputy Attorney General, argued the cause for appellant (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

*Mr. Gerald H. Baker* argued the cause for respondent (*Messrs. Baker, Garber, Duffy and Baker,* attorneys).

PER CURIAM. The judgment of the Appellate Division is affirmed essentially for the reasons set forth in Judge (now Justice) Handler's opinion. 138 *N. J. Super.* 23 (1975).
█ We agree with the conclusion of the Appellate Division that the three instruments executed and delivered respectively by Bakers Basin Realty Co., John and Jane Kachmar, and John and Janina Zagorzycki, as sellers, and

Cortshire Development Corp. as purchaser should be treated as contracts of sale rather than as options. This makes it unnecessary for us to reconsider our earlier holding in *State v. New Jersey Zinc Co.,* 40 *N. J.* 560, 576–77 (1963) that an optionee has no standing to intervene in a condemnation proceeding or to share in an award. For a recent contrary view, see *County of San Diego v. Miller,* 13 *Cal.* 3d 684, 119 *Cal. Rptr.* 491, 532 *P.* 2d 139 (1975).

We also concur in the conclusion that there is sufficient evidence of unity of use to justify treating the three parcels — Bakers Basin, Kachmar and Zagorzycki — as a single integrated unit for purposes of determining severance damages. Although not precisely in point, Justice Pashman's opinion for this Court in *Housing Authority of Newark v. Norfolk Realty Co.,* 71 *N. J.* 314 (1976) would appear to be relevant to a consideration of this issue. See 71 *N. J.* at 321–25.

Affirmed.

CONFORD, P. J. A. D., Temporarily Assigned, concurring in part and dissenting in part. I agree with so much of the Appellate Division's conclusions, here adopted by the Court, as hold that Cortshire has standing to participate in the condemnation. However, I would reach that result by overruling *State v. New Jersey Zinc Co.,* 40 *N. J.* 560 (1963), which holds that an optionee does not have sufficient interest in real estate to warrant admission as a party in a condemnation. I would follow the highly persuasive decision of the California Supreme Court in *County of San Diego v. Miller,* 13 *Cal.* 3d 684, 119 *Cal. Rptr.* 491, 532 *P.* 2d 139 (1975), to the effect that an optionee of real estate should and does have status to participate in the condemnation.

I disagree with the determination of the Court that the three separate tracts purchased by Cortshire, *i. e.,* from Bakers Basin Realty Co., Kachmar and Zagorzycki, respectively, had, as of the commencement of the condemnation action, the requisite unity of use which is necessary to permit the owner

to claim severance damages to the Kachmar and Zagorzycki portions of the assemblage from the taking by the State of only a portion of the Bakers Basin Realty Co. tract.

I

The survival of the *New Jersey Zinc Co.* rule in this State leads to such largely semantic disputations as unfortunately involved the lower courts here. The fine-spun distinction which the Appellate Division was forced to elaborate, *i. e.,* between contracts and options, when an agreement stipulates for liability of the buyer upon default only to the extent of his deposit, serves no useful purpose and simply attenuates condemnation litigation in which the character of certain kinds of realty contract is made an issue. For example, I cannot be sure, upon close reading of the Appellate Division opinion, whether it was the view of that court that if the vendee repudiated the agreement upon a simple change of mind it would have been subject to an action for specific performance by the vendors. If the court intended so to hold, I would probably not be able to agree, in the light of the clear and unambiguous language of the default clause. If. on the contrary, that was not the intent of the opinion, nor the availability of specific performance held to be the talisman of a contract *vis a vis* an option, and if the case constitutes only a holding that if the parties to a contract *intended* to be entering a "contract" rather than an "option", the vendee would thereby acquire standing in the condemnation, I find such a criterion of standing unrealistic and equally unsatisfactory.

All of these difficulties would be dissipated, if, as California has done in the *County of San Diego* case cited above, we recognized that options are a necessary, important and increasingly significant tool of land development in the current economy and that realty optionees should therefore, as a matter of sound public policy as well as fairness, be accorded standing in condemnation. See 119 *Cal. Rptr.* at 496, 532 *P.* 2d at 144.

## II

At the time of commencement of the instant condemnation proceedings the three tracts of land in question were concededly in separate ownerships and separate uses. The State was taking only a strip of the Bakers Basin tract and no part of the others. While there is adequate evidence that the reasonably prospective use of the three tracts was as the common site of a shopping center being planned by Cortshire, the optionee, there was no *present* integrated use of the three parcels. Accordingly, under long settled principles only recently repeated by this Court, see *Housing Authority of Newark v. Norfolk Realty Co.,* 71 *N. J.* 314, 322, 323 (1976), the defendant is not entitled to severance damages to the Kachmar and Zagorzycki tracts allegedly resulting from the State's taking of a part of the Bakers Basin parcel.

In the *Norfolk Realty Co.* case, *supra,* we held that physical separation of properties in a common beneficial proprietorship would not preclude allowance of severance damages, providing

there * * * [is] such a connection or relationship of adaptation, convenience *and actual and permanent use* as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcels left, in the most advantageous and profitable manner in the business *for which they are used.*
(emphasis added).

We there further accentuated the requirement of actual present common use when we said (71 *N. J.* at 323):

The question is not whether the remaining tract can continue to be used if different property is substituted for the condemned parcel, but solely whether there is *in fact an integrated use of both at the time of the taking.*
(emphasis added).

These strong statements are founded upon unquestionable authority. See 4A Nichols, *Eminent Domain* (1976) § 14.31[1]; 27 *Am. Jur.* 2d, *Eminent Domain,* § 315, p. 134;

6 *A. L. R.* 2d 1197, 1202–1203 (1949); "Unity of Use and Unity of Ownership in Eminent Domain", 70 *Dickinson L. Rev.* 139, 140 (1966).

In holding, in the present case, that severance damages would be allowed, the Appellate Division found a "reasonable probability" of future integration of the three tracts as a shopping center, but the court cited not a single authority in support of the view that such prospective use, rather than the "actual and permanent" use found necessary in *Norfolk Realty Co.,* would suffice as a foundation for allowance of severance damages to parcels not invaded by the State. The court may have been influenced by Cortshire's reliance upon *United States ex rel. T.V.A. v. Powelson,* 319 *U. S.* 266, 63 *S. Ct.* 1047, 87 *L. Ed.* 1390 (1943), as purported authority for the proposition that a reasonable probability of intended use will satisfy the requirement of unity of use. This, however, is a distinctly mistaken reading of that decision. The case had nothing to do with severance damages. It declared only that, for purposes of determining the true value of a parcel of land being taken by the condemnor, its availability for future integrated use with other properties not yet then in the condemnee's title could be taken into consideration, but only if there was a reasonably probable prospective use of all the properties together. The case is clearly not a precedent contrary to the requirement for present use with regard to the required "unity of use" of diverse parcels of land as a basis for allowance of severance damage.

Not only is there no present law justifying departure from the requirement of present common use of the separate tracts, but a change of law to permit reasonably probable future use to suffice, would, in my judgment, be contrary to public policy. The State ought not have to pay for more than the *present* value of the land taken or for more than the *present* diminution in value of the remainder of the owner's property not taken (severance value). There simply was no present diminution of value of a separate parcel of land not being taken, based on supposed interference by the taking

with an integrated use of the combined parcels when no such integrated use existed at the time of the taking, and the future incidence of such use was, at best, a matter of uncertainty.[1] These considerations undoubtedly underlie the present unqualified rule on the subject, as declared in *Norfolk Realty Co., supra.* I would not change it.

*For affirmance*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD—5.

*Concurring in part and dissenting in part*—Judge CONFORD—1.

---

[1]The Appellate Division opinion indicates that the taking by the State left not enough highway frontage for a shopping center. 138 *N. J. Super.* at 37. However, we were informed at oral argument that Cortshire has obtained alternate means of access to permit the consummation of the shopping center project. All of this, however, was necessarily a matter of uncertainty at the date of commencement of the condemnation.