[No. 47426–5. En Banc. September 24, 1981.]

SPOKANE SCHOOL DISTRICT No. 81, *Plaintiff,* v. JENNIFER PARZYBOK, ET AL, *Defendants,* FRANCIS E. LINDMAN, ET AL, *Appellants,* EDWARD M. TAKEDA, ET AL, *Respondents.*

*Eberle & Decker, P.S.,* by *C. Raymond Eberle,* for appellants.

*Hackney, Delaney & Davidson* and *Robert S. Delaney,* for respondents.

ROSELLINI, J.—In this condemnation proceeding, the appellants challenge the trial court's allocation of the condemnation award.

Prior to the condemnation, the appellants were the record owners of a residence property in Spokane. The respondents Takeda had been in possession of the property since 1973 as lessees, with an option to purchase the property in 1980, at the end of the lease. In 1979, before the option was exercisable, the school district gave notice of intent to condemn. The market value of the property having been deposited in court, the court was asked to determine whether the optionees were entitled to share in the award. It held that they were entitled to the difference between the unpaid purchase price specified in the option ($22,000) and the amount of the award ($47,000), less the rent for the remainder of the lease term.

The question before us, a new one in this jurisdiction, is whether an optionee in possession under a lease agreement has an interest in or appurtenant to the property which entitles him to share in a condemnation award.

An option to purchase is a contract whereby the owner of the property, for valuable consideration, sells to the optionee the right to buy the property within the time, for the price, and upon the terms and conditions specified in the option, but which in itself imposes no obligation on the purchaser to acquire the property. *Hopkins v. Barlin,* 31 Wn.2d 260, 196 P.2d 347 (1948); *Crowley v. Byrne,* 71 Wash. 444, 129 P. 113 (1912). A subsequent owner, having

notice of the option, takes subject to the optionee's right to complete his purchase. *Crowley v. Byrne, supra.* It was held in that case that, as between the optionee and a subsequent purchaser who had notice of the option right, the optionee had an interest in the land binding upon the purchaser, even though the optionee had not exercised his option or paid any part of the purchase price.

In a number of cases, the holder of an option to purchase has been denied the right to participate in a condemnation proceeding, the theory being that he has no interest in the land.

Typical of these are *East Bay Mun. Util. Dist. v. Kieffer,* 99 Cal. App. 240, 278 P. 476 (1929) and *Cravero v. Florida State Turnpike Auth.,* 91 So. 2d 312 (Fla. 1956), dealing with bare options; and *Ashland v. Kittle,* 347 S.W.2d 522 (Ky. 1961), *Cornell–Andrews Smelting Co. v. Boston & P. R.R.,* 209 Mass. 298, 95 N.E. 887 (1911), *Phillips Petroleum Co. v. Omaha,* 171 Neb. 457, 106 N.W.2d 727 (1960), and *In re City of New York,* 246 N.Y. 1, 157 N.E. 911 (1927), the latter being cases in which the option was contained in a lease. In *Ashland,* the lease actually provided only a right of first refusal in the event the optionor decided to sell the property. In *In re City of New York,* a condemnation clause in the lease denied to the optionee a right to participate in the award. And in *Cornell–Andrews Smelting Co.,* the court held that, while the optionee had no interest in the land and was not entitled to participate in the condemnation proceeding, it did have an equitable interest which entitled it to participate in the condemnation award. The result of this case was that the optionee had no right to offer proof of market value of the land but was entitled to receive the difference between the amount of the award and the purchase price named in the option.

Where the land has increased in value after the option was granted, it cannot be denied that the option is a valuable contract right which is destroyed by the condemnation of the land to which it pertains. Thus, under the rulings of some courts, the optionee suffers a damage for which no

compensation is allowed. Such denial has occurred in spite of the admonition of John Lewis, who, writing in his treatise on eminent domain in 1909, said that the word "property" as used in constitutions providing for compensation when such is taken in eminent domain, should be "held to include every valuable right and interest which a person can have in or appurtenant to land." 2 J. Lewis, *Eminent Domain* § 540, at 967 (3d ed. 1909).

Attempting to justify the rule denying to the optionee a right to participate in the condemnation award, courts have said that to accord him an interest would be to give him the privilege of waiting until the award is made and then exercising the right only if the award is in excess of the purchase price. *Ashland v. Kittle, supra; In re City of New York, supra.*

This is hardly a persuasive argument, since the optionee always has the choice of foregoing his option if the market value of the property has declined, and presumably the condemnation award equals the market value at the time of the condemnation. The loss of a possible increase in market value is a risk that the optionor has assumed in exchange for the price paid for the option. As is pointed out in a note in 14 Wayne L. Rev. 661, 664 (1968), the reasoning of these cases goes directly against the very nature of an option—that it will be exercised only if profitable.

While many courts have been reluctant to accord to the holder of an unexercised option an interest cognizable in a condemnation proceeding, it is unquestioned that a lessee has such an interest. *State v. Spencer,* 90 Wn.2d 415, 583 P.2d 1201 (1978); *State v. Meador,* 60 Wn.2d 543, 374 P.2d 546 (1962); *State ex rel. Long v. Superior Court,* 80 Wash. 417, 141 P. 906 (1914); *Sholom, Inc. v. State Roads Comm'n,* 246 Md. 688, 229 A.2d 576 (1967); 29A C.J.S. *Eminent Domain* § 198 (1965); 1 L. Orgel, *Valuation Under Eminent Domain* § 120 (1953).

The law as it stood in early 1961 is reflected in an annotation, *Right to Damages or Compensation Under Condemnation of Property, of Holder of Unexercised Option*

*To Purchase,* 85 A.L.R.2d 588 (1962). As the annotation reveals, at that time at least two jurisdictions had recognized a right to compensation in eminent domain proceedings, upon the theory that the option was a valuable right which was taken in the condemnation. Cases cited are *Nicholson v. Weaver,* 194 F.2d 804 (9th Cir. 1952) and *In re Governor Mifflin Joint School Auth.,* 401 Pa. 387, 164 A.2d 221 (1960).

Since that time, the Supreme Court of California has disapproved *East Bay Mun. Util. Dist. v. Kieffer, supra,* and other appellate court decisions denying to the optionee the right to participate in a condemnation award. In the leading case of *County of San Diego v. Miller,* 13 Cal. 3d 684, 532 P.2d 139, 119 Cal. Rptr. 491 (1975), it held that the optionee is entitled to the excess of the total award above the optioned purchase price. While not disputing the technical correctness of the basis upon which those cases were decided—that basis being the common law concept that an option to purchase creates no estate as such in the land—the court decided that the controlling principle should be that compensation is due if the condemnation has deprived the claimant of a valuable right, citing *United States v. 53¼ Acres of Land,* 139 F.2d 244, 247 (2d Cir. 1943).[1]

Analyzing the respective positions of the government, the optionor and the optionee, the California court found that there was no discernible detriment to the condemnor, because the optionee sought only that portion of the total award which exceeded his optioned price. That is the case

---

[1] 29A C.J.S. *Eminent Domain* § 196 (1965) reports that a right with respect to the property taken which is valuable is compensable even though it is not technically an interest or estate in the land, citing *United States v. 53¼ Acres of Land, supra,* and *Beard's Erie Basin, Inc. v. People of New York,* 142 F.2d 487 (2d Cir. 1944). Neither of these cases involved an option to purchase. The first cited case allowed a mortgagee to recover the value of his right of redemption. In the second case, the court observed that a state's reversionary interest in granted lands was too remote and incapable of valuation to justify its participation in a condemnation award. The case was decided, however, upon another ground. The principle, however, is broad enough to include options to purchase.

here. We have held that the State's interest is only in ascertaining the market value of the property and paying that award. *State ex rel. Long v. Superior Court, supra.* We said there that it is the business of the court to determine who is entitled to share in the award "[as] a matter of general equity". *Long,* at 422. *Accord, State v. Spencer, supra.*

With respect to the rights of the optionor, the California Supreme Court pointed out that during the life of the option, he has no reasonable expectation of receiving a purchase price exceeding that specified in the option. The optionee, on the other hand, clearly expects to realize any value in excess of the optioned price and often will spend considerable time and expense in furthering the expectation, for example, in obtaining governmental approval of planned construction on the site. To deny the optionee participation in the condemnation award under such circumstances provides the optionor an unjustified and inequitable windfall. It strips the optionee of the expected benefit of his bargained right, while relieving the optionor of his bargained duty at a profit. To deny compensation to the optionee is to deny justice, the court said. *County of San Diego v. Miller, supra* at 692.

The California court also pointed out that the right of the optionee is a substantial one. The option is irrevocable by the optionor, and may be exercised against his successors following his death. When recorded, the option creates a cloud on the optionor's title for 1 year following expiration. (*See Crowley v. Byrne, supra.*) An option, in the absence of a contract provision to the contrary, is assignable. (*See* 1A A. Corbin, *Contracts* § 271 (1963); 3 S. Williston, *Contracts* § 415 (3d ed. 1960).) For tax purposes, the court noted, the assignment is treated as a sale of land by the optionee, citing I.R.C. § 1234(a) and Fed. Tax. Reg. § 1.1234–1. In this state, the transfer of a lease having an option to purchase (but no other lease) is treated as a transfer of real property. RCW 28A.45.010.

Finally, the California Supreme Court concluded that

considerations of public policy dictated that the optionee share in the condemnation award, for which reasons it found that the optionee had a property right which, if taken by the government, was compensable under the state constitution, the measure of damages being the excess, if any, of the total award above the optioned purchase price. *County of San Diego,* at 692.

States which have since approved this approach include Connecticut (*Texaco, Inc. v. Commissioner of Transp.,* 34 Conn. Supp. 194, 383 A.2d 1060 (1977)), Maryland (*Sholom, Inc. v. State Roads Comm'n,* 246 Md. 688, 229 A.2d 576 (1967)), Pennsylvania (*In re Governor Mifflin Joint School Auth., supra*), and Oregon (*Fullington v. M. Penn Phillips Co.,* 238 Ore. 321, 395 P.2d 124 (1964)). *See also New Jersey v. Bakers Basin Realty Co.,* 74 N.J. 103, 376 A.2d 1189 (1977), where the New Jersey court questions the viability of an earlier ruling that the option holder had no standing to share in the award in condemnation.

Approval of the rationale of this approach is reflected in leading treatises on contracts. In S. Williston, *supra* at 72, the writer, in speaking of the assignability of option contracts, says:

[I]t may well be admitted that no interest in land is given by an option and yet asserted that a contract right exists which may be as valuable as an interest in land and which should partake of an ordinary incident of property, like assignability.

(Footnote omitted.) And in 1A A. Corbin, *Contracts* § 272, at 579–80 (1963), it is said:

Whether the option holder's legal relations to the option giver and to third persons should be described as an "interest" in the land is a mere matter of the use of language; but what those legal relations themselves are depends upon what the courts think that justice and sound policy require. . . .

As has heretofore been stated, the holder of an option to buy land has a conditional right to a conveyance, a power to turn that right into an unconditional right to immediate conveyance by performing the conditions, an

immunity from revocation by the option giver, and the legal privilege of performing or not performing the conditions at his option. During the agreed term of his option, he has a right that the option giver shall not repudiate or make performance impossible or more difficult by conveying the land to a third person. These rights are enforceable by all the usual judicial remedies, including judgment for damages, injunction, and decree for specific performance. It is beyond question that those who have bought and paid for an option on the land believe that they have something on which they can rely; they make contracts for the resale of the land, often make valuable improvements on it, and make other important changes of position, as evidence of such reliance.

In view of the foregoing, it seems very clear that the option holder should have rights against third persons also, to the effect that they shall not interfere with performance by the promisor by contracting with him or by accepting from him a deed of conveyance in breach of his duty to the option holder.

(Footnote omitted.)

And Nichols' treatise on eminent domain now recognizes the trend, saying that it favors the conclusion that the owner of an unexercised option to purchase land possesses a property right which is compensable in eminent domain, the measure of damages being the excess, if any, of the total award above the optioned purchase price. 2 J. Sackman, *Nichols on Eminent Domain* § 5.21[1], at 5–58, –59 (rev. 3d ed. Cum. Supp. 1980). *See also* 14 Wayne L. Rev. 660 (1968); 25 Wash. & Lee L. Rev. 102 (1968); 85 A.L.R.2d 588 (1962).

Certain statements which this court has made in cases arising under different circumstances might appear, at first glance, to make it difficult for us to subscribe to this trend.

In a case where we held that a preemptive right of first refusal does not constitute a restraint on alienation, we have recently noted that an option does not create an estate or interest in land. *Robroy Land Co. v. Prather,* 95 Wn.2d 66, 622 P.2d 367 (1980). And we have said, by way of dictum, in a case involving the propriety of apportioning the

condemnation award among parties having interests in the property, that only persons having a proprietary interest (an estate in the land) could share in the award. *State v. Spencer,* 90 Wn.2d 415, 583 P.2d 1201 (1978). This was in answer to the suggestion that under the court's ruling allowing apportionment, lien claimants could also share pro rata in the award. We pointed out that such claimants must satisfy their claims out of the awards made to their debtors.

We do not think those holdings preclude a finding here that the respondents' contractual interest was of sufficient substance to entitle them to share in the award in the condemnation action. It is not necessary to hold that an optionee has an estate in land, or that a lien claimant has an interest comparable to that of an option holder, in order to conclude that the nature of the optionee's right is such that in equity and fairness, he should be permitted to recover from the condemnor the amount of damage which he has suffered.

Our constitution provides that private property shall not be taken for public use without just compensation having been first made, or paid into court for the owner. Const. art. 1, § 16. No attempt is made in that provision to define the term "property", and that responsibility is presumably left to the legislature and to the courts. RCW 8.16.030, .040, and .110 all provide for notice of condemnation to be given, not just to owners but to all persons interested in the property. The holder of an option to purchase surely falls within that class.

We have recognized in *Crowley v. Byrne,* 71 Wash. 444, 129 P. 113 (1912) that an option is so closely appurtenant to the land as to constitute a cloud on the title. And prior to the time when we overruled *Ashford v. Reese,* 132 Wash. 649, 233 P. 29 (1925), holding that a contract vendee has no legal or equitable interest in the subject land, we had held that such a vendee has a right to participate in a condemnation award. *Pierce County v. King,* 47 Wn.2d 328, 287 P.2d 316 (1955). Thus, we have sought to resolve claims of this nature by examining the circumstances and the rela-

tion of the parties, rather than by mere resort to common law concepts of "title".

Not every option to purchase is necessarily of sufficient value and substance to entitle the holder to participate in a condemnation award. Suffice it to say that where, as here, the option is contained as a covenant in a lease, and where the lease has been maintained in good standing up to the time of condemnation, and there is every reason to suppose that the option would be exercised when the time ripens, the property having meanwhile increased in value, the conclusion is inescapable that the optionee has suffered a loss of his property, be it only a contract right, in a definitely measurable amount. It is equitable that he should recover that amount out of the condemnation award and inequitable that the optionor should do so. The trial court was accordingly correct in its disposition of the award.

The judgment is affirmed.

BRACHTENBACH, C.J., and STAFFORD, UTTER, DOLLIVER, HICKS, WILLIAMS, DORE, and DIMMICK, JJ., concur.