STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANS-
PORTATION, PLAINTIFF, v. JAN–MAR, INC., A NEW JERSEY
CORPORATION, DEFENDANT–APPELLANT–CROSS–RESPON-
DENT, AND MOBIL OIL CORPORATION, A CORPORATION
OF NEW YORK, DEFENDANT–RESPONDENT–CROSS–APPEL-
LANT, AND NEW JERSEY NATIONAL BANK, A CORPORA-
TION OF THE UNITED STATES OF AMERICA, STATE OF
NEW JERSEY, PHILIP PESANO, CITY OF LONG BRANCH, IN
THE COUNTY OF MONMOUTH, A MUNICIPAL CORPORA-
TION OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued May 17, 1989—Decided August 23, 1989.

Before Judges KING, ASHBEY and SKILLMAN.

*Bruce P. Fromer* argued the cause for appellant-cross-respondent (*Nelson & Fromer* attorneys; *Bruce P. Fromer*, on the brief).

*Patrick F. McAndrew* argued the cause for respondent, cross-appellant (*Brandt, Haughey, Penberthy, Lewis & Hyland* attorneys; *Patrick F. McAndrew*, on the brief).

No briefs were filed on behalf of State of New Jersey, New Jersey National Bank, Philip Pesano and City of Long Branch.

The opinion of the court was delivered by

ASHBEY, J.A.D.

This is an appeal concerning compensable interests in a condemnation case. Respecting the issue which we regard as justiciable, the allocation right of a lessee whose lease contains an option to purchase the land, we affirm substantially for the

reasons expressed by Judge Milberg in his opinion reported at 210 *N.J.Super.* 236. We leave for another day the question of standing to participate in the condemnation proceedings, evidence to be there proffered, and the valuation in condemnation of an unexercised option held by a lessee.

On August 21, 1985, the State filed a declaration of taking against defendant Jan–Mar Corporation (Jan–Mar), the real property owner, Mobil Oil Corporation (Mobil), a lessee of part of the property, and Philip Pesano, a sub-lessee of Mobil's lease. The condemned property included Mobil's corner lot (gas station) and Jan–Mar's surrounding unimproved land not subject to the lease. The gas station comprised approximately two-fifths of the total property condemned. Pesano was operating the gas station. Mobil's August 2, 1955 lease ran for fifteen years at $385 per month with three five-year options to renew at $300 per month. At the time of the taking Mobil was operating under its final renewal, and the lease was due to expire on October 31, 1986. Mobil also had an option to purchase the gas station property outright for $60,000 during the term of the lease (unexercised at condemnation) and the right to purchase the property at any price offered by another buyer. The lease specifically reserved to Mobil in condemnation all "rights granted by law." Mobil owned all of the improvements which it had placed on the leased land.[1]

Judge Milberg held that a lessee of condemned land is entitled to compensation and to participate in the condemnation proceedings, not just to participate in the allocation proceeding pursuant to *R.* 4:73–9(b). He ruled that Mobil could submit evidence as to the value of its total leasehold estate in the condemnation. 210 *N.J.Super.* at 245. The judge further relied on out-of-state authority in holding that Mobil's option (because it was incorporated in the lease) was a compensable

---

[1] The court-appointed appraiser valued the leased land's improvements at $76,900.

interest in real property, although New Jersey law might be construed to hold otherwise. *Id.* at 244. The judge went on to hold that Mobil would not be entitled to recover the value of both the lease and the option, and its recovery would be limited to the amount of the award attributable to the leased portion of the premises less the option purchase price, less the rent reserved for the remainder of the lease term. *Id.* at 246.

In accord with this opinion, Judge Milberg denied Mobil's application to dismiss the State's complaint, denied Mobil's application for discovery on the issue of negotiations between the State and Jan–Mar, but granted Mobil's motion to participate in the condemnation proceedings and to proffer non-cumulative proofs respecting the value of Mobil's unexercised option to purchase the leased premises as well as the value of Mobil's remaining lease.

Following this ruling Judge Milberg appointed an appraiser to determine the relative value of Mobil's leased premises. The appraiser valued the leased portion at a total of $156,200, and Jan–Mar's unleased portion at $73,600, a total of $229,800 for all interests.

The parties negotiated and in July 1987, Mobil moved for an order declaring the total amount of compensation to be $251,-000. The resulting December 3, 1987 order (consented to by Mobil, Jan–Mar and the State) said:

> Ordered that of the $251,000.00 agreed upon just compensation, Mobil shall be allocated $95,500.00 and Jan–Mar shall be allocated the balance of $155,-500.00 This allocation takes into account all adjustments between said parties for rent and the option price, in accordance with the valuation method set forth in the decision of the Honorable Alvin Y. Milberg, A.J.S.C., dated September 11, 1985 ...

> \* \* \* \* \* \* \* \*

> Ordered that Jan–Mar, Inc. reserves its right to appeal the entirety of the decision of the Honorable Alvin Y. Milberg, A.J.S.C., dated September 11, 1987, in connection with Mobil's participation in the condemnation proceedings and/or the valuation of Mobil's interest in the condemnation award, and such other and further issues contained in the decision as Jan–Mar may choose to contest, with the exception of those issues regarding the State's jurisdiction and power to condemn the subject property at issue herein....

## I

On appeal the parties frame the issue as whether a lessee who holds an option to purchase the leased premises may participate in the condemnation proceedings. In our view, however, that issue was mooted by the parties' agreement. It is well settled law that the purpose of the initial condemnation proceedings is to find the total value to be awarded for all of the interests condemned. This is described as the "unit rule." *New Jersey Highway Authority v. J. & F. Holding Co.,* 40 *N.J.Super.* 309, 314 (App.Div.1956). "Those having interest in the property less than ownership or claims arising by reason of the condemnation can only be compensated by appropriate division of the fund thereby created." *State v. New Jersey Zinc Co.,* 40 *N.J.* 560, 574 (1963). Although the judge's interim order appealed from and his opinion raised the question of Mobil's interest in the "unit" value, a fair reading of the issues consented to in the final order persuades us that the parties agreed on a "unit" value. Having so agreed, the issue of who could participate in the proceeding by which that value could be established and the proofs which could have been there proffered is moot.

## II

While the question of standing to establish unit value is moot, the issue remains concerning whether, as between it and Jan–Mar, Mobil had a compensable interest other than the value remaining on its lease. *See N.J. Sports & Exposition Auth. v. E. Rutherford,* 137 *N.J.Super.* 271, 279 (Law Div.1975), 4 *Nichols, Eminent Domain* (3 ed. 1985), § 12.42[1], [2] at 770, 789. Without an option to buy or other relevant agreement, the lessor is generally compensated for his reversionary interest, and the lessee for damages to his leasehold, *see New Jersey Highway Authority v. J. & F. Holding Co.,* 40 *N.J.Super.* at 316; *Wayne Co. Inc. v. Newo, Inc.,* 75 *N.J.Super.* 100, 104

(App.Div.1962). *See State v. Hess Realty Corp.*, 226 *N.J.Super.* 256, 262 (App.Div.1988), aff'd o.b. 115 *N.J.* 229, 230 (1989).

In holding that Mobil's option to purchase the land was compensable, Judge Milberg relied on two cases, *Sholom Inc. v. State Roads Commission*, 246 *Md.* 688, 699, 229 *A.*2d 576, 582 (Ct.App.1967), where the Maryland court held, "[the lessee's] option to buy, ... is ancillary to its interest in the property as a lessee," and *Spokane School District v. Parzybok*, 96 *Wash.*2d 95, 103, 633 *P.*2d 1324, 1329 (1981), where the court held that lessees with an option to buy were entitled to be compensated for the value of the option.

The court in *Spokane* said:

> Not every option to purchase is necessarily of sufficient value and substance to entitle the holder to participate in a condemnation award. Suffice it to say that where, as here, the option is contained as a covenant in a lease, and where the lease has been maintained in good standing up to the time of condemnation, and there is every reason to suppose that the option would be exercised when the time ripens, the property having meanwhile increased in value, the conclusion is inescapable that the optionee has suffered a loss of his property, be it only a contract right, in a definitely measurable amount. It is equitable that he should recover that amount of the condemnation award and inequitable that the optionor should do so. [*Ibid.*]

The court added:

> It is beyond question that those who have bought and paid for an option on the land believe that they have something on which they can rely; they make contracts for the resale of the land, often make valuable improvements on it, and make other important changes of position, as evidence of such reliance. [96 *Wash.*2d at 102, 633 *P.*2d at 1328]

In *County of San Diego v. Miller*, 13 *Cal.*3d 684, 691, 119 *Cal.Rptr.* 491, 495, 532 *P.*2d 139, 143 (1975), also cited by Judge Milberg in support of his ruling, the court relied on the oft-quoted sentence in *United States v. Fuller*, 409 *U.S.* 488, 490, 93 *S.Ct.* 801, 803, 35 *L.Ed.*2d 16, 20 (1973), "[t]he constitutional requirement of just compensation derives as much content from the basic equitable principles of fairness ... as it does from technical concepts of property law."

In his published opinion Judge Milberg distinguished *State v. New Jersey Zinc.* 210 *N.J.Super.* at 241. In *Zinc*, the Su-

preme Court held that an option holder could receive condemnation value for an option which had been exercised after the State moved for the appointment of commissioners but before the State had acquired title. 40 *N.J.* at 578. *(See N.J.S.A.* 20:1–9, 1–12 as then enacted). The option holder, however, was foreclosed from participating or receiving any portion of the condemnation award respecting land for which he had not (and could not) exercise his option.[2] In *State v. Bakers Basin Realty*, 74 *N.J.* 103, 105 (1977), the Supreme Court further held that a contract purchaser of land had a compensable interest in condemnation proceedings, distinguishing *Zinc.*

Judge Milberg acknowledged the continued viability of the *Zinc* holding that the holder of an unexercised option to buy with no other interest in the land has no standing to participate in the condemnation proceeding or to share in the resulting award, 210 *N.J.Super.* at 241, but found Mobil's lease interest sufficiently superior to *Zinc*'s bare option to merit a contrary result. We find that analysis of Mobil's rights respecting its unexercised option persuasive and affirm substantially for the reasons expressed in his reported opinion, 210 *N.J.Super.* at 243–245. We are also satisfied that this conclusion is consistent with *New Jersey Zinc* and *Bakers Basin.*

In *New Jersey Highway Authority v. J. & F. Holding Co.*, 40 *N.J.Super.* at 315, Judge Jayne said that in apportionment many rights might be implicated, including those of "contractual vendees or owners of other future interests...." Although Judge Jayne referred there to options to renew or to terminate as relevant to a lease's value, he took a liberal view of compensable land interests, distinguishing them from, "loss of business, profits, good will, ... or [the] cost of removal [of fixtures]." *Id.* at 316. *Cf. Littman v. Gimello*, 115 *N.J.* 154 (1989). That view accords with *Zinc* and later cases. At the

---

[2]*See* Annotation, "Right to damages or compensation upon condemnation of property, of holder of unexercised option to purchase," 85 *A.L.R.2d* 588 (1962).

time the State deprived condemnees of title, Mobil had the right to protect its considerable investment in improvements by replacing all of Jan–Mar's interest in the leased premises for a set sum and every economic reason to delay exercising that right as long as possible. That surely entitled it to a substantial portion of the allocation. Otherwise Jan–Mar obtained a windfall.

## III

Mobil, by letter dated September 30, 1986, gave Jan–Mar "notice of Mobil's intent to exercise the option...." In *New Jersey Zinc,* the Court said,

> An optionee who exercises his option after the institution of condemnation proceedings, [but before the State acquires title] ... stands in the same legal position as one who enters into a contract to purchase the property after the action was commenced. [40 *N.J.* at 578]

As we have observed, under the law interpreted in *Zinc,* the State acquired title after its institution of the condemnation action, giving the option holder time to exercise his option to buy while the landowner still retained title. The *Zinc* Court also addressed the possibility of an option holder exercising an option *after* the State acquired title, saying:

> We are not presently required to pass upon the question of what the effect would be of a purported exercise of the option ... *after the taking had occurred, i.e., after payment into court of the award of commissioners and the simultaneous automatic passage of title to the State....* The authorities in other jurisdictions where different procedural theories prevail are divided. One line makes the taking the cut-off date, since " * ˟ ˝ otherwise the lessee [optionee] would have the privilege of waiting until the award was made and then exercising or not exercising his option according to whether or not the amount of the award was in excess of the option price." [Citations omitted]. The other line of authority ... holds that where the land has been condemned and the optionee may no longer obtain it, he may nevertheless, by exercise of the option, purchase the fund into which the land has been converted and come into the eminent domain proceeding at that point (with the right to participate thereafter with respect to matters not already determined). The only expression in New Jersey which is at all analogous leans to the first view, see *Delancey & Stockton Corp. v. Reliable Improvement Co., supra,* 134 *N.J.Eq.* [71] at *p.* 76, but we reserve the point. [40 *N.J.* at 578–579 n. 3 (emphasis added) ]

Judge Milberg expressly declined to rule on the effect of Mobil's attempted exercise of the option. 210 *N.J.Super.* at 246. Having agreed with Judge Milberg substantially for the reasons he expressed respecting compensability of the unexercised option, we have no occasion to consider Mobil's attempted exercise of the option as an alternative reason for finding Mobil's option compensable. It is arguable that Mobil's attempted exercise accorded with the principles of *Zinc*, and without cause for the reservations there expressed. From the time it was served with the complaint Mobil sought to participate in establishing value for that part of the land subject to its option. Moreover, because the leased land was only part of the condemned land, no action on Mobil's part would have spared Jan–Mar from participating in the valuation process. It is a fair reading of the record that neither party derived unmerited advantage from the timing of Mobil's action in exercising its option, a problem which appeared to concern the *Zinc* court.

Rather than relying on the exercise of the option to accord with *Zinc*, where the facts, law and issue were different, however, we choose to focus, as did Judge Milberg, on the agreement itself to determine the allocation rights of the parties. *Zinc*, 40 *N.J.* at 575 n. 2; *Delancey & Stockton Corp. v. Reliable Improvement Company*, 134 *N.J.Eq.* at 76; *Jersey City Redevelopment Corp. v. Exxon Corp.*, 208 *N.J.Super.* 53, 57 (App.Div.1986); *N.J. Sports & Exposition Auth. v. E. Rutherford*, 137 *N.J.Super.* at 279; *cf. State v. Hess Realty Corp.* 115 *N.J.* at 230 reaffirming *Jersey City Redevelopment Corp. v. Exxon Corp.*[3]

We accordingly dismiss as moot the appeal and cross-appeal respecting Mobil's participation in establishing the "unit" value

---

[3]*State v. Hess* and *Jersey City Redevelopment* rejected the claim of a gas station franchisee-lessee to be separately compensated in condemnation for lost business opportunity, historically not an interest in land, nor to be compensated in the allocation of the award, based on his contract with the landowner.

and affirm Mobil's right to an allocation respecting the value of its option as of the date of the taking.[4]

---

[4]Following oral argument, Jan–Mar abandoned its appeal from the allocation amounts which it had asserted were prematurely established in the final judgment.